[No. A051310. First Dist., Div. Five. June 6, 1991.]

JOHN NORMAN ELLIS, Plaintiff and Appellant, v.
A. A. PIERCE, as Director, etc., Defendant and Respondent.

COUNSEL

Ed Kuwatch for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, N. Eugene Hill, Assistant Attorney General, Jose R. Guerrero and Landra E. Rosenthal, Deputy Attorneys General, for Defendant and Respondent.

OPINION

KING, J.—In this case we hold that the right to be free from double jeopardy is not violated when the Department of Motor Vehicles (DMV) suspends a driver's license for refusal to take a blood-alcohol test, even though the licensee was convicted of driving under the influence and received a 48-hour "refusal enhancement" for the same conduct. John Norman Ellis appeals from a judgment denying his petition for writ of mandamus. We affirm.

On January 28, 1990, Ellis was arrested on suspicion of drunk driving and refused to submit to a chemical test of his blood-alcohol content. On January 30 he was charged with driving under the influence (Veh. Code, § 23152, subd. (a)) and a refusal enhancement (Veh. Code, §§ 23157, 23159). On February 8, the DMV suspended his driver's license for six months for refusal to take a chemical test (Veh. Code, § 13353). The suspension was stayed pending a requested hearing.

At the April 5 hearing Ellis argued that proceedings to suspend his driving privilege for the same conduct alleged in the previously filed criminal complaint violated the constitutional prohibition against double punishment. On the same day he pleaded guilty to the drunk-driving charge and admitted the refusal allegation. His county jail/work program sentence included 48 hours of incarceration for the refusal enhancement (Veh. Code, § 23159, subd. (a)(2)). On May 24, the DMV vacated the stay and reinstated Ellis's six-month license suspension. Ellis then requested either a reopening of the hearing to take further evidence (Veh. Code, § 14106) or administrative review of the hearing officer's decision (Veh. Code, § 14105.5). The latter was granted and the suspension upheld.

On June 26, Ellis filed a petition for an alternative writ of mandamus which was issued the next day. After a hearing on August 20, the trial court denied the petition and dismissed the alternative writ.[1]

■ The Fifth Amendment's double jeopardy clause precludes multiple punishments for the same offense. (*United States* v. *Halper* (1989) 490 U.S. 435, 440 [104 L.Ed.2d 487, 496, 109 S.Ct. 1892].) In *Halper*, the Supreme Court rejected the notion that "punishment in the relevant sense is meted out only in criminal proceedings, and that whether proceedings are criminal or civil is a matter of statutory construction." (*Id.* at p. 447 [104 L.Ed.2d at p. 501].) Rather, violation of the double jeopardy clause "can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state." (*Ibid.* [104 L.Ed.2d at p. 501], fn. omitted.) "Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." (*Id.* at p. 448 [104 L.Ed.2d at p. 501].) Therefore, "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction *may not fairly be characterized as remedial, but only as a deterrent or retribution.*" (*Id.* at pp. 448-449 [104 L.Ed.2d at p. 502], italics added.)

■ A driver's license suspension for refusal to take a chemical test is not "remedial" in the sense meant by the *Halper* decision. The defendant in that case had been convicted of Medicare fraud under the criminal false-claims statute (18 U.S.C. § 287), sentenced to prison for two years and fined $5,000, and then subjected to an additional penalty of more than $130,000 under the civil False Claims Act (31 U.S.C. §§ 3729-3731). The Supreme Court ruled that in order to uphold the civil sanction as remedial, the sanction had to bear a rational relation to the goal of compensating the government for its actual loss. (490 U.S. at p. 449 [104 L.Ed.2d at p. 502].) Thus, the notion of a sanction being remedial in the sense meant by *Halper* connotes redress to an injured party. (See, e.g., *Small* v. *Com.* (1990) 12 Va.App. 314 [398 S.E.2d 98, 100] [sanction is not remedial if it bears no rational relation to the goal of compensating "the injured party . . . for its loss"]; Black's Law Dict. (6th ed. 1990) p. 1294 [statute is remedial rather than penal if its purpose is "to measure and define the damages which may accrue to an individual or class of individuals, as just and reasonable compensation for a possible loss . . ."].)

---

[1]Ellis's claim that the judgment was signed by a judge other than the one who heard the matter apparently results from his confusing the actual judgment and order with a copy attached to the notice of entry.

The driver's license suspension statute achieves no compensation to any injured party for any tangible loss. For this reason it cannot be fairly characterized as remedial within the meaning of the *Halper* decision. The suspension law was summarily described in *Bush* v. *Bright* (1968) 264 Cal.App.2d 788, 792 [71 Cal.Rptr. 123], as a "remedial statute" which must be liberally construed, but this unelucidated characterization of the statute simply does not fit the narrow construction of "remedial" as employed in *Halper.*

But the suspension statute cannot be fairly characterized as a deterrent or retribution, either. Appellate courts have repeatedly described the goals of the statute as twofold: the immediate purpose is to obtain the best evidence of blood-alcohol content, and the long-range purpose is to reduce highway injuries by inhibiting intoxicated persons from driving. (*Webb* v. *Miller* (1986) 187 Cal.App.3d 619, 626 [232 Cal.Rptr. 50]; *Mackler* v. *Alexis* (1982) 130 Cal.App.3d 44, 50 [181 Cal.Rptr. 613]; *Anderson* v. *Cozens* (1976) 60 Cal.App.3d 130, 143-144 [131 Cal.Rptr. 256]; *People* v. *Fite* (1968) 267 Cal.App.2d 685, 688 [73 Cal.Rptr. 666]; *Zidell* v. *Bright* (1968) 264 Cal.App.2d 867, 870 [71 Cal.Rptr. 111].) This long-range purpose has also been asserted in a formal expression of legislative intent, which states in pertinent part that one of the purposes of the suspension law is to "provide safety for all persons using the highways of this state by quickly suspending the driving privilege of those persons who have shown themselves to be safety hazards by driving with an excessive concentration of alcohol in their bodies." (Stats. 1989, ch. 1460, § 1, subd. (a).)

Neither of these purposes is deterrent or retributive, and thus neither is punitive. The immediate purpose is merely to facilitate the gathering of evidence. The long-range purpose is to protect public safety by keeping drunk drivers off public roads.

■ The suspension of a driver's license after refusal to take a chemical test is closely analogous to the disbarment or suspension of an attorney after conviction of a crime involving moral turpitude. (Bus. & Prof. Code, § 6101.) The attorney's disbarment or suspension does not constitute a second punishment in violation of the double jeopardy clause because the State Bar proceeding is " '*sui generis*, neither civil nor criminal in character.' " (*Fitzsimmons* v. *State Bar* (1983) 34 Cal.3d 327, 332 [193 Cal.Rptr. 896, 667 P.2d 700], italics in original, quoting *Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 447 [113 Cal.Rptr. 602, 521 P.2d 858].) This is because the purpose of the disbarment or suspension is not to punish, but to protect the public from unfit lawyers. That purpose is "reminiscent of" but nevertheless

distinct from the criminal process. (*Mississippi State Bar* v. *Young* (Miss. 1987) 509 So.2d 210, 213-214, fn. 1, quoting *In Matter of Logan* (1976) 70 N.J. 222 [358 A.2d 787, 790] and Martyn, *Lawyer Competence and Lawyer Discipline: Beyond the Bar?* (1971) 69 Geo.L.J. 705, 708-709.)

 Just as the purpose of attorney disbarment or suspension is to protect the public by keeping unfit lawyers from practicing law, the long-range purpose of a driver's license suspension is to protect the public by keeping unfit drivers from driving. If the former is not punishment for purposes of double jeopardy analysis, the latter must not be, either.

We also note that the driver's license suspension statute differs from the statute imposing the 48-hour refusal enhancement in that the former does not require *willful* refusal. (*Pawlowski* v. *Pierce* (1988) 202 Cal.App.3d 692, 698-699 [249 Cal.Rptr. 49].) One indication of the punitive nature of a sanction is that "it comes into play only on a finding of *scienter*." (*Kennedy* v. *Mendoza-Martinez* (1963) 372 U.S. 144, 168 [9 L.Ed.2d 644, 661, 83 S.Ct. 554], fn. omitted, italics in original.) Finally, the fact that suspension of one's driving privilege is extremely inconvenient does not bring it within the ambit of the double jeopardy clause, as often "for the defendant even remedial sanctions carry the sting of punishment." (*United States* v. *Halper*, *supra*, 490 U.S. at p. 447, fn. 7 [104 L.Ed.2d at p. 501].)

We therefore conclude that although the suspension of a driver's license for refusal to take a chemical test cannot be characterized as remedial, it also cannot be fairly characterized as a deterrence or retribution. Like attorney disbarment and suspension, it is sui generis. As it does not constitute punishment, a license suspension after imposition of the 48-hour refusal enhancement does not violate the double jeopardy clause.

Ellis also contends the trial court abused its discretion because it purportedly ruled "that the practicalities of administering the chemical test refusal laws outweighed appellant's rights under the U.S. Constitution not to be punished twice for the same conduct." This startling assertion is based on the trial court's observation that, "If it is double jeopardy, the whole state will come to a halt real fast." The record clearly demonstrates this comment was not the basis of any ruling whatsoever. Rather, the trial court stated its opinion that Ellis made "an interesting argument, not without imagination," but one which nonetheless was not supported by the cited authorities.

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.

Appellant's petition for review by Supreme Court was denied September 4, 1991.