656 So.2d 223 (1995)
Keith DAVIDSON, Petitioner,
v.
Cynthia Z. MacKINNON, Circuit Court Judge, etc., Respondent.
No. 95-1009.
District Court of Appeal of Florida, Fifth District.
June 2, 1995.
William J. Sheaffer, Orlando, for petitioner.
No appearance for respondent.
W. SHARP, Judge.
After Davidson refused to submit to a breathalyzer test, an administrative proceeding was conducted pursuant to section 322.2615, Florida Statutes (1995), and his driver's license was suspended. He asks this court to prohibit his subsequent criminal prosecution for driving under the influence of alcohol, which arises out of the same conduct, on the ground that his constitutional double jeopardy rights[1]not to be punished twice for the same offense will be violated by the criminal prosecution.[2] We deny the writ of prohibition.
Davidson argues that the suspension of his driver's license, which arose out of the same drunk driving conduct for which he is now being prosecuted, was a punitive action. He relies on language found in the 1989 Final Staff Analysis of section 322.2615, which was prepared by the staff for the Criminal Justice Committee of the House of Representatives. It states that section 322.2615 is consistent with the state's comprehensive plan in that it seeks to "prevent, punish and discourage criminal behavior."[3]
The courts of this state have consistently held that the suspension of a driver's license in an administrative proceeding does *224 not bar a subsequent prosecution of the driver for DUI. See Smith v. City of Gainesville, 93 So.2d 105 (Fla. 1957) (revocation of driver's license based on defendant's conviction for DUI does not violate the prohibition against double jeopardy); State v. Murray, 644 So.2d 533 (Fla. 4th DCA 1994) (prosecution for DUI does not violate double jeopardy principles when defendant's driver's license has been suspended pursuant to F.S. § 322.2615); Gomez v. State, 621 So.2d 578 (Fla.3d DCA 1993) (no double jeopardy violation is involved in the prosecution of a DUI charge after a driver's license has been seized under F.S. § 322.2615 because of the same conduct); Freeman v. State, 611 So.2d 1260 (Fla.2d DCA 1992), rev. denied, 623 So.2d 493 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 415, 126 L.Ed.2d 361 (1993) (revocation of driver's license upon conviction for DUI does not preclude DUI prosecution). All of these cases rely on the principle enunciated in Smith that the protection of the public justifies the revocation of a driver's license upon the commission of certain offenses. Although the loss of such a valuable privilege may be painful, the primary purpose of the law is to protect the public from the sometimes fatal consequences of allowing those who cannot or do not choose to control their drinking habits, to continue to drive on the public roadways.
Nonetheless, Davidson contends that the legislative history articulated by the House Criminal Justice Committee Staff Report when section 322.2615 was enacted, which indicates its purpose is to "punish," overcomes any prior judicial determination that the purpose of Florida's driver's license suspension or revocation laws is the protection of the public. Petitioner argues that this distinction is vital because in United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the United States Supreme Court held that a civil sanction which is imposed not solely for remedial purposes, but which also serves either retributive or deterrent purposes, constitutes punishment which bars further prosecution for the same conduct. See also Department of Revenue of Montana v. Kurth Ranch, ___ U.S. ___, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).
In Freeman v. State, the Second District considered the applicability of Halper to Florida's license suspension and revocation statutes. Although acknowledging that suspension of a driver's license for refusal to take a chemical test is not remedial in the sense used in Halper, the court in Freeman held that neither was the purpose of the law punitive. The court concluded that the purpose of the statute providing for revocation of a driver's license upon conviction for driving while intoxicated is "to provide an administrative remedy for public protection and not for punishment of the offender." Freeman at 1261.
Freeman is consistent with the position taken by a majority of other state courts which have considered the issue. As stated in Ellis v. Pierce, 230 Cal. App.3d 1557, 282 Cal. Rptr. 93 (1991), although a driver's license revocation for failure to submit to a breathalyzer test does not compensate any injured party for any loss, and therefore cannot be characterized as remedial, such a provision is not for deterrence or retribution, but rather serves the immediate purpose of obtaining the best evidence of blood alcohol content and the long range goal of reducing highway injuries, thereby protecting the public. The court in Ellis concluded that a license suspension does not violate the double jeopardy clause when imposed after a conviction of DUI. See also Johnson v. State, 95 Md. App. 561, 622 A.2d 199 (1993) (purpose of license suspension is to protect other drivers and fact that suspension may carry the sting of punishment does not alter its civil character); Butler v. Dept. of Public Safety and Corrections, 609 So.2d 790 (La. 1992) (driver's license suspension is civil, not punitive in nature, and was enacted to promote public safety, so criminal prosecution is not barred by suspension under double jeopardy clause); State v. Strong, 158 Vt. 56, 605 A.2d 510 (1992) (suspension of a driver's license is not punishment for purpose of double jeopardy analysis).
Since 1967, Florida law has provided for the suspension of a driver's license for refusal to take a breath test. Ch. 67-308, Laws of Fla., enacting § 322.261, Fla. Stat. (1967). Davidson's argument that the language in the 1989 House Staff Analysis changed the legislative intent for this law, which has been in effect in a similar form for more than 20 *225 years, places far too much importance on the report. We note that the Senate Staff Analysis of the same law lists the "state's compelling interest in highway safety" as the basis for the legitimate exercise of the state's police power in enacting this law.[4] The conflicting language in these two reports illustrates the questionable validity of relying on staff reports as proof of legislative intent.
We conclude that the administrative remedy of suspending a driver's license because of drunk driving or other related behavior was and continues to be primarily for the purpose of enhancing safe driving on the public highways. Its effect is remedial in a general or universal sense, because it removes dangerous drivers from the highways. And, it can also be viewed as remedial for the individual driver involved, since in an intoxicated state, a driver poses a serious danger to him or herself, as well as to others. As such, it is no more punitive than denying a person who is legally blind a driver's license. Both will live longer and healthier lives if they do not drive.
PETITION DENIED.
GRIFFIN and THOMPSON, JJ., concur.
NOTES
[1] U.S. Const. Amend. V; Fla. Const. Art. I, § 9.
[2] § 322.2615, Fla. Stat. (1993).
[3] House of Representatives, Criminal Justice Committee Final Staff Analysis & Economic Impact Statement on Ch. 89-525, Laws of Florida (1989).
[4] Senate Staff Analysis and Economic Impact Statement on SB 5-A (1989).