STATE OF NORTH CAROLINA v. NORMAN LEE OLIVER, JR.

No. 378PA95

(Filed 10 May 1996)

1. **Automobiles and Other Vehicles § 115 (NCI4th); Constitutional Law § 172 (NCI4th)— DWI arrest—administrative revocation of driver's license—subsequent criminal prosecution—no double jeopardy**

   The ten-day administrative revocation of defendant's driver's license under N.C.G.S. § 20-16.5 after his arrest for DWI and the $50 restoration fee constitute a remedial highway safety measure and not punishment for purposes of double jeopardy analysis; therefore, defendant's subsequent conviction for DWI did not amount to a second punishment for the same offense in violation of the Double Jeopardy Clause of the United States Constitution and the Law of the Land Clause of the North Carolina Constitution. U.S. Const. amend. V; N.C. Const. art. I, § 19.

   **Am Jur 2d, Automobile Insurance § 71; Automobiles and Highway Traffic § 310; Criminal Law §§ 258 et seq.**

   **Validity and application of statute or regulation authorizing revocation or suspension of driver's license for reason unrelated to use of, or ability to operate, motor vehicle. 18 ALR5th 542.**

2. **Evidence and Witnesses §§ 1831, 2311 (NCI4th)— chemical analysis of breath—notice of rights by arresting officer—admissibility of results**

   In enacting N.C.G.S. § 20-16.2(a), the legislature did not intend to require an officer, other than the arresting officer, to

notify a person charged with DWI of his rights regarding chemical analysis of the breath in order for the test results to be admissible in the criminal prosecution for DWI; rather, the legislature intended to permit a qualified arresting officer to notify defendant of his rights, orally or in writing, regarding a chemical analysis of the breath. The requirements governing the admissibility of a chemical breath analysis were satisfied in this DWI case where the arresting officer notified defendant of his rights; defendant and the State stipulated that the arresting officer was certified as a chemical analyst by the N.C. Department of Human Resources at the time he conducted the chemical analysis of defendant's breath; and defendant's alcohol concentration was tested by an automated instrument which prints the results of the chemical analysis. N.C.G.S. §§ 20-139.1(a) and (b).

**Am Jur 2d, Automobiles and Highway Traffic §§ 305-307; Evidence §§ 1021, 1022.**

**Driving while intoxicated—duty of law enforcement officer to offer suspect chemical sobriety test under implied consent law. 95 ALR3d 710.**

**Necessity and sufficiency of proof that tests of blood alcohol concentration were conducted in conformance with prescribed methods. 96 ALR3d 745.**

**Drunk driving—Motorist's right to private sobriety test. 45 ALR4th 11.**

3. **Automobiles and Other Vehicles § 852 (NCI4th); Criminal Law § 904 (NCI4th)— impaired driving—disjunctive instruction—unanimity of verdict**

The trial court did not allow a nonunanimous verdict in violation of Art. I, § 24 of the N.C. Constitution and N.C.G.S. § 15A-1237(b) by its instruction allowing the jury to find defendant guilty of impaired driving if it found beyond a reasonable doubt that defendant drove a vehicle on a highway in this state while he was under the influence of an impairing substance *or* had an alcohol concentration of 0.08 or more at a relevant time after driving, since N.C.G.S. § 20-138.1 creates one offense which may be proved by either or both theories detailed in subsections (1) and (2), and the jury could unanimously find defendant guilty of the single offense of impaired driving even though some of the jurors may have found that defendant was under the influence of an impairing substance and other jurors may have found that

STATE v. OLIVER

[343 N.C. 202 (1996)]

defendant's alcohol concentration was 0.08 or more at some relevant time after driving.

**Am Jur 2d, Criminal Law § 892; Trial §§ 1750 et seq.**

**Right to trial by jury in criminal prosecution for driving while intoxicated or similar offense. 16 ALR3d 1373.**

Justice WEBB dissenting.

On discretionary review pursuant to N.C.G.S. § 7A-31 prior to a determination by the Court of Appeals of defendant's conviction for driving while impaired entered by Allen (J.B., Jr.), J., at the 26 June 1995 Criminal Session of Superior Court, Alamance County. Heard in the Supreme Court 15 December 1995.

*Michael F. Easley, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, for the State.*

*Hunt and White, by George E. Hunt and Octavis White, Jr., for defendant-appellant.*

*Wyatt & Cunningham, by James F. Wyatt, III, and John R. Cunningham, III; and Rawls & Dickinson, by Eben T. Rawls, on behalf of The North Carolina Academy of Trial Lawyers, amicus curiae.*

LAKE, Justice.

Defendant appeals his conviction and sentence for driving while impaired ("DWI") in violation of N.C.G.S. § 20-138.1. Defendant contends his conviction must be reversed because: (1) the administrative license revocation proceeding which resulted in defendant's driver's license being revoked for ten days barred defendant's subsequent criminal prosecution for DWI under the principles of double jeopardy; (2) the arresting officer informed defendant of his rights regarding the chemical analysis of his breath for alcohol concentration rather than allowing another officer to do so, which violated N.C.G.S. § 20-16.2(a) and required the suppression of defendant's breath test result in his criminal prosecution for DWI; and (3) the trial court instructed the jury in such a way as to allow a nonunanimous verdict, which violated the North Carolina Constitution and N.C.G.S. § 15A-1237(b). For the reasons which follow, we affirm defendant's conviction and sentence.

On 24 June 1994, Trooper E.L. Morris charged defendant with DWI in violation of N.C.G.S. § 20-138.1. Defendant submitted to a

chemical analysis of his breath to determine his alcohol concentration using an Intoxilyzer 5000, and prior to the chemical analysis, Trooper Morris notified defendant of his rights regarding the Intoxilyzer 5000. At the time defendant was tested, Trooper Morris was a certified chemical analyst with the North Carolina Department of Human Resources. The chemical analysis of defendant's breath revealed defendant's alcohol concentration was 0.08. Trooper Morris completed and filed an affidavit and revocation report regarding the analysis result. Upon review by a magistrate, a revocation order was entered 24 June 1994 revoking defendant's driver's license for ten days. The Division of Motor Vehicles restored defendant's driver's license at the expiration of the ten days upon defendant's payment of a $50 restoration fee.

On 4 May 1995, defendant was found guilty of DWI in district court; defendant appealed to superior court. Defendant filed a motion to dismiss the DWI charge against him on the ground that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prevented his prosecution for DWI and filed a motion to suppress the result of the Intoxilyzer 5000 test on the ground that Trooper Morris failed to take defendant before another officer to inform defendant of his rights in accord with N.C.G.S. § 20-16.2(a). Both motions were denied by Judge J.B. Allen, Jr. On 28 June 1995, a jury found defendant guilty of DWI.

I.

[1]  Defendant contends that the Double Jeopardy Clause of the United States Constitution and the Law of the Land Clause of the North Carolina Constitution prohibited defendant's conviction for DWI because he allegedly had already been punished for this offense.

The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 664-65 (1969) (footnotes omitted), *companion case overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 104 L. Ed. 2d 865 (1989). The Law of the Land Clause incorporates similar protections under the North Carolina Constitution. *See* N.C. Const. art. I, § 19. In this case, defendant contends that the guarantee against double jeopardy has been implicated because he was doubly punished in separate proceedings which were based on the same offense. More specifically, defendant argues that

STATE v. OLIVER

[343 N.C. 202 (1996)]

the ten-day administrative revocation of his driver's license constitutes punishment for purposes of double jeopardy analysis, and thus, his subsequent criminal conviction for DWI amounts to a second punishment for the same offense. The State responds that the ten-day driver's license revocation is a highway safety measure, not punishment; therefore, according to the State, there is no double jeopardy violation. We agree with the State in this regard.

Defendant relies upon three cases from the United States Supreme Court: *United States v. Halper*, 490 U.S. 435, 104 L. Ed. 2d 487 (1989); *Austin v. United States*, 509 U.S. 602, 125 L. Ed. 2d 488 (1993); and *Department of Revenue v. Kurth Ranch*, —— U.S. ——, 128 L. Ed. 2d 767 (1994). Under these cases, defendant contends that the term "punishment" for purposes of double jeopardy analysis is now to be afforded a much broader definition than that traditionally employed. Defendant states that *Halper* began this trend of broadly interpreting punishment and that a sanction must now be classified as punishment when the sanction, though serving remedial goals, also serves the twin aims of punishment—deterrence and retribution.

In *United States v. Halper*, the United States Supreme Court phrased the dispositive question as "whether and under what circumstances a civil penalty may constitute 'punishment' for the purposes of double jeopardy analysis." 490 U.S. at 436, 104 L. Ed. 2d at 494. The Court noted first that in identifying the inherent nature of a proceeding, labels of "criminal" and "civil" were not of paramount importance and "that in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated." *Id.* at 447 n.7, 104 L. Ed. 2d at 501 n.7. The Court announced what it termed as a "rule for the rare case," *id.* at 449, 104 L. Ed. 2d at 502, and explained:

> [A] civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.
>
> . . . [P]unishment serves the twin aims of retribution and deterrence. . . . [A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second

sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

*Id.* at 448-49, 104 L. Ed. 2d at 501-02 (citations omitted).

Next, the Supreme Court decided *Austin v. United States*, 509 U.S. 602, 125 L. Ed. 2d 488. Citing *Halper's* formula for determining whether a sanction constitutes punishment, the Court held that a civil forfeiture of property under 21 U.S.C. § 881(a)(4) and (7), as applied in *Austin*, equaled punishment and was, therefore, "subject to the limitations of the Eighth Amendment's Excessive Fines Clause." *Austin*, 509 U.S. at —, 125 L. Ed. 2d at 506. The Supreme Court later decided *Department of Revenue v. Kurth Ranch*, — U.S. —, 128 L. Ed. 2d 767. Again, relying on *Halper*, the Court determined that Montana's Dangerous Drug Tax Act, as applied in *Kurth Ranch*, was "too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." *Kurth Ranch*, — U.S. at —, 128 L. Ed. 2d at 781.

Thus, the narrow issue before this Court is whether the ten-day driver's license revocation under N.C.G.S. § 20-16.5 cannot fairly be said to serve a remedial purpose because the revocation also serves the goals of punishment such that defendant's subsequent criminal conviction for DWI amounts to a second punishment for the same offense in violation of the Double Jeopardy Clause. For the following reasons, we conclude that the ten-day driver's license revocation does not constitute punishment as such, and consequently, defendant's criminal conviction for DWI did not violate the Double Jeopardy Clause.

Historically, this Court has long viewed drivers' license revocations as civil, not criminal, in nature. *See Seders v. Powell*, 298 N.C. 453, 462, 259 S.E.2d 544, 550 (1979) ("[R]evocation proceedings are civil because they are not intended to punish the offending driver but to protect other members of the driving public."); *State v. Carlisle*, 285 N.C. 229, 232, 204 S.E.2d 15, 16 (1974) ("The purpose of a revocation proceeding is not to punish the offender, but to remove from the highway one who is a potential danger to himself and other travelers."); *Joyner v. Garrett*, 279 N.C. 226, 234, 182 S.E.2d 553, 559 (1971) ("Proceedings involving the suspension or revocation of a license to operate a motor vehicle are civil and not criminal in nature, and the revocation of a license is no part of the punishment for the crime for which the licensee was arrested."); *Honeycutt v. Scheidt*, 254 N.C. 607, 610, 119 S.E.2d 777, 780 (1961) ("The purpose of the suspension or revocation of a driver's license is to protect the public and not to

punish the licensee."); *Harrell v. Scheidt*, 243 N.C. 735, 739, 92 S.E.2d 182, 185 (1956) ("[T]he revocation of a license to operate a motor vehicle is not a part of, nor within the limits of punishment to be fixed by the court, wherein the offender is tried.").

In *Henry v. Edmisten*, 315 N.C. 474, 340 S.E.2d 720 (1986), this Court reviewed the statute presently at issue, N.C.G.S. § 20-16.5, and held that it did not offend the Due Process and the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution or the Law of the Land and the Equal Protection Clauses of the North Carolina Constitution. In the Court's analysis under the Law of the Land Clause, the Court labeled N.C.G.S. § 20-16.5 as remedial rather than punitive and noted:

> After a person charged with impaired driving fails a breath test, prompt remedial action by the [S]tate is needed. Such a person . . . represents a demonstrated present as well as [an] appreciable future hazard to highway safety. The safety of the impaired driver and other people using the [S]tate's highways depends upon immediately denying the impaired driver access to the public roads.

*Henry*, 315 N.C. at 494, 340 S.E.2d at 733. While the Court explicitly recognized that the substance of the law, not the label given to it by the legislature, governed, the Court cited as additional support for its decision the fact that N.C.G.S. § 20-16.5(o) provides: " 'Proceedings under this section are civil actions, and must be identified by the caption "In the Matter of ————." ' " *Id.* at 495, 340 S.E.2d at 734 (quoting N.C.G.S. § 20-16.5(o)).

Defendant, however, argues that *Henry* is inapplicable to the present case for a variety of reasons. After careful consideration of each, we must disagree. While *Henry* did not present the Court, as we have previously noted, with an issue involving the principles of double jeopardy, we nevertheless find persuasive the Court's analysis and conclusion that N.C.G.S. § 20-16.5 is remedial.

Defendant cites the following legislative commentary on N.C.G.S. § 20-16.5 and contends the commentary establishes that the ten-day driver's license revocation has deterrent and retributive purposes, and consequently, the statute cannot be said to serve solely remedial purposes:

> This [revocation] provision serves a couple of functions important to the Governor and the proponents of the bill. First, it provides an immediate "slap in the face" to virtually all drivers

charged with DWI. Second, the fact that it is imposed independent of the trial on the criminal charge makes it more certain that a sanction will be imposed, regardless of the defendant's status or his lawyer's expertise.

Ann L. Sawyer, *North Carolina Legislation 1983: A Summary of Legislation in the 1983 General Assembly of Interest to North Carolina Public Officials*, "Impaired Driving: The Safe Roads Act," 117 (Institute of Government, Univ. of N.C. at Chapel Hill, 1983). However, the Court in *Henry*, confronted by this same legislative commentary, rejected defendant's argument:

> We conclude, nevertheless, that the summary revocation procedure of § 16.5 is not a punishment but a highway safety measure. Whatever the intent of individual proponents of the bill, the bill as finally enacted reflects an intent by the legislature for the revocation provision to be a remedial measure. . . . Revocation is not added punishment for a criminal act but a finding that a driver is no longer fit to hold and enjoy the driving privilege which the [S]tate has granted under its police power.

*Henry*, 315 N.C. at 495-96, 340 S.E.2d at 734.

We are not persuaded in light of *Halper, Austin* or *Kurth Ranch* to depart from the repeated holdings of this Court characterizing the purpose of drivers' license revocations as remedial rather than as punishment. *Halper* did not hold that every civil sanction be viewed as punishment, as defendant urges; rather, the Court labeled its holding as a "rule for the rare case" and noted that the sanction of more than $130,000 Halper faced was "overwhelmingly disproportionate to the damages he has caused." *Halper*, 490 U.S at 449, 104 L. Ed. 2d at 502. In contrast, the temporary ten-day driver's license revocation provided for in N.C.G.S. § 20-16.5 and the $50 restoration fee are neither excessive nor overwhelmingly disproportionate responses to the immediate dangers an impaired driver poses to the public and himself. An impaired driver presents an immediate, emergency situation, and swift action is required to remove the unfit driver from the highways in order to protect the public. We do not pretend to ignore that a driver's license revocation, even of short duration, may, for some, have a deterrent effect. However, as the United States Supreme Court recognized, whether a particular sanction constitutes punishment need not be determined from the defendant's perspective since "even remedial sanctions carry the sting of punishment." *Halper*, 490 U.S. at 447 n.7, 104 L. Ed. 2d at 501 n.7. Indeed, any deterrent effect a driver's

license revocation may have upon the impaired driver is merely incidental to the overriding purpose of protecting the public's safety. By our decision, we join with the majority of states which have considered this issue and held that a DWI conviction after a defendant has had his or her driver's license revoked does not violate the Double Jeopardy Clause.[1]

Moreover, this Court has long held that a driver's license "is not a natural or unrestricted right, nor is it a contract or property right in the constitutional sense. It is a conditional privilege, and the General Assembly has full authority to prescribe the conditions upon which licenses may be issued and revoked." *Joyner,* 279 N.C. at 235, 182 S.E.2d at 559; *see Harrell,* 243 N.C. 735, 92 S.E.2d 182. The ten-day driver's license revocation provided for in N.C.G.S. § 20-16.5 merely signifies the failure of the driver to adhere to the conditions imposed by the legislature on the driver's license. As such, it is not punishment.

In conclusion, we hold that the ten-day driver's license revocation provided for under N.C.G.S. § 20-16.5 and the $50 restoration fee do not constitute punishment for purposes of double jeopardy analysis. Consequently, defendant's subsequent prosecution for DWI did not violate the Double Jeopardy Clause. This assignment of error is overruled.

II.

[2] In another assignment of error, defendant contends that N.C.G.S. § 20-16.2(a) requires an officer, other than the arresting officer, to notify a person charged with an implied-consent offense of his rights regarding chemical analysis of the breath in order for the test results to be admissible in a criminal prosecution for DWI. Defendant argues that Trooper Morris informed defendant of his rights rather than hav-

―――――――――

1. *See State v. Zerkel,* 900 P.2d 744 (Alaska Ct. App. 1995); *State v. Nichols,* 169 Ariz. 409, 819 P.2d 995 (Ct. App. 1991); *Ellis v. Pierce,* 230 Cal. App. 3d 1557, 282 Cal. Rptr. 93 (1991); *Davidson v. MacKinnon,* 656 So. 2d 223 (Fla. Dist. Ct. App.), *disc. rev. denied,* 662 So. 2d 931 (Fla. 1995); *Gomez v. State,* 621 So. 2d 578 (Fla. Dist. Ct. App. 1993); *Freeman v. State,* 611 So. 2d 1260 (Fla. Dist. Ct. App. 1992), *disc. rev. denied,* 623 So. 2d 493 (Fla.), *cert. denied,* —— U.S. ——, 126 L. Ed. 2d 361 (1993); State v. Higa, 79 Haw. 1, 897 P.2d 928 (1995); *State v. Funke,* 531 N.W.2d 124 (Iowa 1995); *State v. Maze,* 16 Kan. App. 2d 527, 825 P.2d 1169 (1992); *Butler v. Department of Public Safety,* 609 So. 2d 790 (La. 1992); *State v. Savard,* 659 A.2d 1265 (Me. 1995); *Johnson v. State,* 95 Md. App. 561, 622 A.2d 199 (1993); *State v. Hanson,* 543 N.W.2d 84 (Minn. 1996) (en banc); *State v. Young,* 249 Neb. 539, 544 N.W.2d 808 (1996); *State v. Cassady,* 140 N.H. 46, 662 A.2d 955 (1995); *Helber v. State,* 915 S.W.2d 955 (Tex. Ct. App. 1996); *State v. Strong,* 158 Vt. 56, 605 A.2d 510 (1992).

ing another officer do so, and thus, the results of the chemical analysis of defendant's breath should have been inadmissible at his DWI trial.

Defendant relies upon *Nicholson v. Killens*, 116 N.C. App. 473, 448 S.E.2d 542 (1994), as support for his contention. *Nicholson* involved an appeal of a superior court's order rescinding the administrative revocation of Nicholson's driver's license for willfully refusing to submit to a chemical breath analysis pursuant to N.C.G.S. § 20-16.2(d). The Court of Appeals affirmed and held that N.C.G.S. § 20-16.2 requires an arresting officer to take a defendant before another officer who is to inform defendant, both orally and in writing, of the rights enumerated in N.C.G.S. § 20-16.2(a). *Nicholson*, 116 N.C. App. at 477, 448 S.E.2d at 544. In the present case, defendant acknowledges that the Court of Appeals limited its holding in *Nicholson* to "the governing statutes relating to the statutorily mandated twelve (12) month administrative revocation of petitioner's driver's license for refusal to submit to breath analysis pursuant to G.S. 20-16.2." *Id.* at 478-79, 448 S.E.2d at 545. With regard to the failure of the arresting officer to take defendant before another officer to inform defendant of his rights, the court stated that:

> This failure has no adverse effect whatever on any subsequent criminal prosecution for driving while impaired . . . . Likewise [the court's] decision here has no adverse effect whatever on the admissibility of the results of the breath analysis using an automated breath instrument that prints the result of its analysis, where a driver has agreed to submit to the breath analysis.

*Id.* at 478, 448 S.E.2d at 544. However, defendant nevertheless urges this Court to apply *Nicholson* to the facts of the present case even though the present case does not involve a driver's license revocation for refusal to submit to a chemical breath analysis. We decline to do so.

N.C.G.S. § 20-16.2 sets forth the procedures for notifying a defendant of his rights with respect to chemical analysis of the breath as well as for notifying a defendant of his rights with respect to chemical analysis of the blood. The portion of N.C.G.S. § 20-16.2(a), in effect at the time of defendant's trial, dealing with chemical analysis of the breath provides in pertinent part:

> [B]efore any type of chemical analysis is administered the person charged must be taken before a chemical analyst authorized to administer a test of a person's breath, who must inform the per-

son orally and also give the person a notice in writing [of the rights enumerated in N.C.G.S. § 20-16.2(a)].

N.C.G.S. § 20-16.2(a) (1993) (amended 1995). However, the portion of N.C.G.S. § 20-16.2(a) dealing with chemical analysis of the blood provides that "the charging officer *or* the arresting officer may give the person charged the oral and written notice of rights required." *Id.* (emphasis added). Thus, N.C.G.S. § 20-16.2(a) arguably implies a rather oblique internal discrepancy or ambiguity in that when a chemical analysis of the blood is performed, the arresting officer is permitted to notify defendant of his rights regarding the test, yet when a chemical analysis of the breath is performed, an inference arises from the language "the person charged must be taken before a chemical analyst" that the arresting officer may not notify defendant of his rights regarding the test, even if such officer is authorized to administer the test.

A cardinal principle governing statutory interpretation is that courts should always give effect to the intent of the legislature. *State v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978). The will of the legislature "must be found from the language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought to be remedied." *State ex rel. N.C. Milk Comm'n v. National Food Stores*, 270 N.C. 323, 332, 154 S.E.2d 548, 555 (1967).

> We should be guided by the rules of construction that statutes *in pari materia*, and all parts thereof, should be construed together and compared with each other. Such statutes should be reconciled with each other when possible, and any irreconcilable ambiguity should be resolved so as to effectuate the true legislative intent.

*State ex rel. Comm'r of Ins. v. N.C. Rate Bureau*, 300 N.C. 381, 400, 269 S.E.2d 547, 561 (1980) (citations omitted). In this regard, we note that N.C.G.S. § 20-139.1, relating to procedures governing chemical analysis and its admissibility, explicitly refers to the terms of N.C.G.S. § 20-16.2 several times, and N.C.G.S. § 20-16.2 likewise references N.C.G.S. § 20-139.1.

N.C.G.S. § 20-139.1(b1) was recently amended to provide: "A chemical analysis of the breath may be performed by an arresting officer *or* by a charging officer when . . . [t]he officer possesses a current permit issued by the Department of Environment, Health, and

STATE v. OLIVER

[343 N.C. 202 (1996)]

Natural Resources . . . [and the] officer performs the chemical analysis by using an automated instrument that prints the results." N.C.G.S. § 20-139.1(b1) (1993) (emphasis added). Thus, under the provisions of N.C.G.S. § 20-139.1(b1), an arresting officer can administer a chemical analysis of the breath, provided that other stated requirements are additionally met. Similarly, under the provisions of N.C.G.S. § 20-16.2(a), an arresting officer can notify defendant of his rights regarding a chemical analysis of the blood. We find these two provisions, which do not restrict the abilities of the arresting officer, reflective of the true legislative intent. Accordingly, as to any disparity or ambiguity contained in N.C.G.S. § 20-16.2(a), we conclude that the legislature intended to permit a qualified arresting officer to notify defendant of his rights, orally and in writing, regarding a chemical analysis of the breath, and we so construe the statute. Indeed, logic dictates that if an arresting officer is duly qualified and authorized to administer a chemical analysis of the breath, such arresting officer should also be duly qualified to notify defendant of his rights regarding that test, and a defendant's rights cannot be impaired by such notification. Reason further dictates that if an arresting officer can inform a defendant of his rights regarding one method of chemical analysis, the arresting officer should also be able to inform a defendant of his rights regarding another.

Moreover, we note that "[i]n any implied-consent offense . . . a person's alcohol concentration as shown by a chemical analysis is admissible in evidence." N.C.G.S. § 20-139.1(a). In order for a chemical analysis to be valid, the analysis must be performed in accord with "methods approved by the Commission for Health Services," N.C.G.S. § 20-139.1(b), and the analysis must be performed "by an individual possessing a current permit issued by the Department of Environment, Health, and Natural Resources," id. The defendant and the State stipulated that Trooper Morris was a certified chemical analyst with the North Carolina Department of Human Resources at the time he conducted the chemical analysis of defendant's breath. The parties also stipulated that defendant's alcohol concentration was tested with the Intoxilyzer 5000, and defendant does not argue that the Intoxilyzer 5000 is not an automated instrument which prints the results of the chemical analysis. It is plain, then, that the requirements governing the admissibility of the chemical breath analysis were satisfied in the instant case, and the results of the analysis were properly admitted at defendant's DWI trial. This assignment of error is overruled.

III.

**[3]** In his last assignment of error, defendant contends that the trial court instructed the jury in such a way as to allow a nonunanimous verdict in violation of the North Carolina Constitution and N.C.G.S. § 15A-1237(b). The trial court instructed the jury in pertinent part as follows:

> So . . . I charge you that if you find from the evidence beyond a reasonable doubt that . . . defendant . . . drove a vehicle on a highway within the [S]tate and that when he did so he was under the influence of an impairing substance *or* had consumed sufficient alcohol that at any relevant time after the driving the defendant had an alcohol concentration of [0.08] or more it would be your duty to return a verdict of guilty of impaired driving.

(Emphasis added.) Defendant objected to these instructions based on the disjunctive phrasing and requested that the trial court instruct the jury that in order for it to find defendant guilty of DWI pursuant to N.C.G.S. § 20-138.1, it must either unanimously agree that defendant drove a vehicle on a highway within this State while he was under the influence of an impairing substance or unanimously agree that at any relevant time after the driving, defendant had an alcohol concentration of 0.08 or more. The trial court denied defendant's request. Defendant argues that the instructions given were fatally ambiguous in that the jury could have returned a guilty verdict without all twelve jurors agreeing that defendant was either appreciably impaired or had an alcohol concentration of 0.08 or more at a relevant time after driving. We note first that the trial court instructed the jury in accord with the pattern jury instructions. *See* N.C.P.I.—Crim. 270.00 (1994).

The North Carolina Constitution provides that "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N.C. Const. art. I, § 24; *see* N.C.G.S. § 15A-1237(b) (1988). In *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990), the trial court instructed the jury that "[a]n indecent liberty is an immoral, improper or indecent touching or act by the defendant upon the child, *or* an inducement by the defendant of an immoral or indecent touching by the child." *Id.* at 563, 391 S.E.2d at 178 (emphasis added). Defendant Hartness contended that because the instruction was phrased in the disjunctive, a nonunanimous verdict could have been returned by the jury. In rejecting defendant's contention, this Court reasoned that "[t]he risk of a nonunanimous verdict does not arise in

cases such as the one at bar because the statute proscribing indecent liberties does not list, as elements of the offense, discrete criminal activities in the disjunctive." *Id.* at 564, 391 S.E.2d at 179. We find *Hartness* controlling on this issue.

The relevant statute in the present case provides, in part:

(a) Offense.—A person commits the *offense of impaired driving* if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:

    (1) While under the influence of an impairing substance; or

    (2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more.

N.C.G.S. § 20-138.1 (1993) (emphasis added). As is indicated by the plain language of the statute, N.C.G.S. § 20-138.1 proscribes the single offense of driving while impaired which may be proven in one of two ways. *State v. Coker*, 312 N.C. 432, 440, 323 S.E.2d 343, 349 (1984) ("[W]e interpret N.C.G.S. 20-138.1 as creating one offense which may be proved by either or both theories detailed in N.C.G.S. 20-138.1(a)(1) & (2).") Even accepting defendant's argument as true, that some jurors may have found defendant was under the influence of an impairing substance and that some jurors may have found defendant's alcohol concentration was 0.08 or more at some relevant time after driving, the fact remains that jurors unanimously found defendant guilty of the single offense of impaired driving. Thus, as with the indecent liberties statute at issue in *Hartness*, we conclude that the disjunctive phrasing of the instruction was not a fatal ambiguity which resulted in a nonunanimous jury verdict. This assignment of error is overruled.

For the foregoing reasons, we conclude the defendant received a fair trial, free from prejudicial error.

NO ERROR.

Justice Webb dissenting.

I dissent from the majority because I believe that when the defendant was tried for driving while impaired after his license had been revoked for having a blood alcohol content of .08 percent, he was twice put in jeopardy for the same offense.

As I read the cases cited by the majority, if a person has been punished for an offense in one proceeding, the Fourteenth Amendment to the Constitution of the United States prohibits his punishment again for the same offense in another proceeding. The majority says the rule does not apply in this case because the ten-day suspension of the driver's license was a remedial and not a punitive action. The majority says the revocation was for the public safety rather than for punishment.

I disagree with the majority. The loss of a driver's license for ten days is a harsh penalty. I believe the impact on public safety from the revocation of a license for ten days is slight. If the person whose license is revoked is a danger on the highways, a ten day revocation will have little effect on such a danger. He or she will be on the highways again after ten days. If a person whose license is revoked is not dangerous, the only effect of revocation is punishment.

I believe the revocation of the defendant's driver's license for ten days was punitive, and the defendant may not be punished a second time for the action that caused him to lose his driver's license.