| | | |
|---|---|---|
| STATE OF NORTH CAROLINA | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| HENRY LEE HUNT | ) | |

No. 5A86-10

The State petitions this Court to issue its writs of certiorari and prohibition to review the 9 September 2003 Order of the Honorable Gary Locklear, Superior Court Judge Presiding, staying the execution of capital defendant Henry Lee Hunt scheduled for Friday, 12 September 2003, moves the Court to prohibit further evidentiary hearing, and moves the Court to vacate the stay of execution entered by the trial court. Having reviewed the contentions of the parties and authorities cited by the parties, the Court hereby allows the State's petition for writ of certiorari for the limited purpose of entering the following order:

N.C.G.S. § 15-187 authorizes death by lethal injection as the sole manner of execution in North Carolina, and directs that "[a]ny person convicted of a criminal offense and sentenced to death shall be executed *only* by the administration of a lethal quantity of an ultrashort-acting barbiturate in combination with a chemical paralytic agent." N.C.G.S. § 15-187 (2001) (emphasis added). N.C.G.S. § 15-188 similarly provides: "In accordance with G.S. 15-187, the mode of executing a death sentence must *in every case* be by administering to the convict or felon a lethal quantity of an ultrashort-acting barbiturate in combination with a chemical paralytic agent until the convict or felon is dead." N.C.G.S. § 15-188 (2001) (emphasis added). The North Carolina Department of Correction (DOC) administers three drugs: thiopental sodium (a sedative that is commonly referred to by the trademark name, Pentothal); pancuronium bromide (a muscle relaxant that is commonly referred to by the trademark name, Pavulon); and potassium chloride (a drug that stops the heart from beating).

The reasonable interpretation of the statutes in question is that in using the word "only" in N.C.G.S. § 15-187, the Legislature limited the method of execution in North Carolina to lethal injection, as opposed to asphyxiation by gas or other methods, as had been the practice in North Carolina prior to the amendment of N.C.G.S. § 15-187 in 1998. Prior to 1983, the method of execution in North Carolina was asphyxiation by lethal gas. N.C.G.S. § 15-187 (1978). Effective 5 July 1983, the Legislature amended N.C.G.S. § 15-187 and other related statutes

to provide that "at least five days prior to his execution date, [a person sentenced to death could] elect in writing to be executed by the administration of a lethal quantity of an ultrashort-acting barbiturate in combination with a chemical paralytic agent." Act of July 5, 1983, ch. 678, sec. 1, 1983 N.C. Sess. Laws 652. From 1983 until 1998, there were two methods of execution available in North Carolina—a death row inmate could elect to be executed by lethal injection, but if the inmate made no such election his execution would proceed by asphyxiation with a lethal gas. In 1998, the Legislature again amended N.C.G.S. § 15-187 and related statutes to make lethal injection the sole method of execution in North Carolina, thus eliminating asphyxiation with a lethal gas as an execution method. Act of Oct. 30, 1998, ch. 212, sec. 17.22(a), 1998 N.C. Sess. Laws 937, 1204. It was not until the 1998 amendment that the word "only" was inserted in N.C.G.S. § 15-187.

The addition of "only" to N.C.G.S. § 15-187 does not reflect a legislative intent to limit the drugs or chemicals that can be used during a lethal injection execution, but rather limits the method of execution in North Carolina solely to lethal injection instead of asphyxiation by lethal gas or some other method. *See State v. Buckner*, 351 N.C. 401, 408, 527 S.E.2d 307, 311 (2000) (noting that "when interpreting a statute, courts must look to the intent of the legislature," and "'[i]ndividual expressions must be construed as a part of the composite whole and be accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit.'") (quoting *State v. Tew*, 326 N.C 732, 739, 392 S.E.2d 603, 607 (1990)). This Court has held that "[t]he will of the legislature 'must be found from the language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought to be remedied.'" *State v. Oliver*, 343 N.C. 202, 212, 470 S.E.2d 16, 22 (1996) (quoting *State ex rel. N.C. Milk Comm'n v. National Food Stores*, 270 N.C. 323, 332, 154 S.E.2d 548, 555 (1967)). Moreover, "where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." *Mazda Motors of Am., Inc. v. Southwestern Motors, Inc.*, 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979) (citations and quotations omitted).

The adverb "only" modifies "shall be executed," not "an ultrashort-acting barbiturate in combination with a chemical paralytic agent." By utilizing "only" in the statute, the Legislature did not intend

to limit the categories of drugs or chemicals that DOC can administer in carrying out lethal injection executions to "only" an ultrashort-acting barbiturate in combination with a chemical paralytic agent.

Further support for this Legislative intent can be found in N.C.G.S. § 15-188, which provides: "In accordance with G.S. 15-187, the mode of executing a death sentence must in every case be by administering to the convict or felon a lethal quantity of an ultra-short-acting barbiturate in combination with a chemical paralytic agent until the convict or felon is dead." N.C.G.S. § 15-188. The phrase "must in every case be" modifies "the mode of executing a death sentence," again clearly indicating that the Legislature sought to limit the method of execution in North Carolina, not the manner in which that method (lethal injection) could be carried out. *Id.*

The State's emergency petition for writ of prohibition and the State's motion to prohibit further evidentiary hearing are ALLOWED.

Having reviewed the contentions of the parties and authorities cited by the parties, defendant's petition for writ of certiorari to review the denial of his third motion for appropriate relief based upon an allegation of actual innocence is DENIED.

The State's motion to vacate the stay of execution is ALLOWED.

By order of the Court in Conference, this 11th day of September, 2003.

Brady, J.
For the Court