STATE OF NORTH CAROLINA v. KEVIN CLYDE DAVIS

No. COA96-746

(Filed 3 June 1997)

**1. Criminal Law § 31 (NCI4th Rev.)— sale of marijuana— entrapment—jury question**

In a prosecution of a high school student for selling marijuana to an undercover officer, the trial court did not err in submitting the issue of entrapment to the jury where the State presented ample evidence from which the jury could infer defendant's predisposition to sell marijuana, and where defendant's conflicting testimony may have been sufficient to raise the issue of inducement but fell short of compelling a conclusion of entrapment as a matter of law.

**Am Jur 2d, Criminal Law §§ 202-209.**

Modern status of the law concerning entrapment to commit narcotics offense—state cases. 62 ALR3d 110.

Modern status of the law concerning entrapment to commit narcotics offense—federal cases. 22 ALR Fed. 731.

2. **Constitutional Law § 172 (NCI4th)— school expulsion— criminal conviction—not double jeopardy**

Defendant's expulsion from school for selling marijuana, pursuant to N.C.G.S. § 115C-391(d), was an administrative discipline and intended to protect the student body and not a judicial punishment; therefore, defendant's subsequent criminal conviction for selling marijuana was not a double jeopardy violation.

**Am Jur 2d, Criminal Law §§ 258 et seq.**

Appeal from judgments entered 15 February 1996 by Judge Henry V. Barnette, Jr. in Wake County Superior Court. Heard in the Court of Appeals 27 February 1997.

*Attorney General Michael F. Easley, by Associate Attorney General Sharon C. Wilson, for the State.*

*John T. Hall for defendant-appellant.*

LEWIS, Judge.

Defendant Kevin Clyde Davis appeals his convictions of possession with intent to sell and deliver marijuana and sale and delivery of marijuana. Defendant filed a motion to dismiss on the grounds of entrapment as a matter of law and double jeopardy. The motion was denied.

The State's evidence tended to show the following. Pursuant to an undercover operation conducted by the Wake County Sheriff's Department and the Raleigh Police Department, defendant was arrested on 25 October 1995 for selling marijuana to undercover agent Clint Thompson ("Agent Thompson") in the parking lot of Cary High School. Agent Thompson attended six classes per day at Cary High School from 15 September to 10 November 1995. At trial, Agent Thompson testified that as part of the undercover operation, he usually spent ten to fifteen minutes in his car in the school parking lot talking to other students. He attended earth science class with defendant from 1:30 to 2:15 p.m. and sometimes saw him on the way to class. Agent Thompson testified that he only had two conversa-

tions with defendant concerning drugs prior to the sale that took place on 25 October 1995. The first conversation occurred approximately one week prior to the sale. In response to defendant's question about his plans for the weekend, Agent Thompson told defendant that he and his girlfriend would smoke some weed. Agent Thompson testified that he wanted defendant to know that he was a person who smoked marijuana. Agent Thompson testified that their second conversation took place on 25 October 1995 on the way to class. Defendant asked him how his weekend went and Agent Thompson told defendant that it was not good because he did not have any weed. After class, Agent Thompson went to his car. He testified that at approximately 2:25 p.m., defendant came to his car and reached into his jeans' pocket and pulled out a small bag with a green leafy substance in it, which appeared to be marijuana. He further testified that he asked defendant how much he wanted for the bag and defendant replied a "dime" or ten dollars. Agent Thompson indicated that he secured the evidence in his sack and turned it over to his superior officer. Agent Thompson testified that he only saw defendant at school or during school hours, never at night or on the weekends, and never called him on the telephone.

Defendant testified that he had given Agent Thompson marijuana, but said that he did not want any money for it. Defendant admitted that he did not give the money back, but testified that Agent Thompson had pushed the money into his hand. Defendant further testified that he had never sold marijuana and "did not believe in it." Defendant stated that he had received the marijuana at a party, free of charge, from a man he did not know. Defendant also testified that Agent Thompson asked him about drugs approximately thirty to forty times, and that defendant finally gave the marijuana to Agent Thompson to "get him off my back." Defendant's girlfriend and her two best friends testified that Agent Thompson talked about marijuana "all the time."

[1] On appeal, defendant first argues that the trial court erred in denying his motion to dismiss based on the defense of entrapment as a matter of law. Defendant argues but for the repeated contact and inducements made by Agent Thompson, he would not have possessed marijuana with the intent to sell or deliver. We disagree.

Entrapment is the inducement of a person to commit a criminal offense not contemplated by that person, for the mere purpose of instituting a criminal action against him. *State v. Stanley*, 288 N.C. 19,

27, 215 S.E.2d 589, 595 (1975). To establish the defense of entrapment, it must be shown that (1) law enforcement officers or their agents engaged in acts of persuasion, trickery or fraud to induce the defendant to commit a crime, and (2) the criminal design originated in the minds of those officials, rather than with the defendant. *State v. Walker*, 295 N.C. 510, 513, 246 S.E.2d 748, 749 (1978). The defense is not available to a defendant who was predisposed to commit the crime charged absent the inducement of law enforcement officials. *State v. Hageman*, 307 N.C. 1, 27, 296 S.E.2d 433, 448 (1982). The defendant has the burden of proving entrapment to the satisfaction of the jury. *Id.*

Ordinarily, the issue of entrapment is a question of fact to be resolved by the jury. *Stanley*, 288 N.C. at 27, 215 S.E.2d at 595. Only when "the undisputed evidence discloses that an accused was induced to engage in criminal conduct that he was not predisposed to commit" can we hold as a matter of law that the defendant was entrapped. *Hageman*, 307 N.C. at 30, 296 S.E.2d at 450. Predisposition may be shown by the defendant's ready compliance, acquiescence in, or willingness to cooperate in the proposed criminal plan. *Id.*

In the present case, the State presented ample evidence from which the jury could infer defendant's predisposition to sell marijuana. Defendant knew that the substance he delivered was marijuana, told Agent Thompson that he had a "dime," and knew that amount of "weed" should cost ten dollars. Defendant admitted taking ten dollars from Agent Thompson and admitted not trying to give the money back to the agent.

Defendant's conflicting testimony that Agent Thompson made repeated requests for defendant to obtain drugs for him, that he gave the marijuana to Agent Thompson without requesting any money, and that he lacked any knowledge about selling drugs may have been sufficient to raise the issues of inducement, and lack of predisposition to commit the offenses, but fell short of compelling a conclusion of entrapment as a matter of law. The issue of entrapment was properly submitted to, and rejected by, the jury. The court did not err in denying defendant's motion for dismissal of the charges.

[2] Next, defendant argues that the Double Jeopardy Clause of the United States Constitution and the Law of the Land Clause of the North Carolina Constitution prohibits his conviction because he had already been punished when he was suspended from school.

STATE v. DAVIS

[126 N.C. App. 415 (1997)]

The Double Jeopardy Clause "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 664-65 (1969). The Law of the Land Clause incorporates similar protections under the North Carolina Constitution. *Id.* In this case, defendant contends that his suspension from Cary High School by the Wake County School Board for the possession and sale of marijuana constitutes punishment for purposes of double jeopardy analysis, and thus, his subsequent criminal conviction for the possession, sale and delivery of marijuana amounts to a second punishment for the same offense. The State responds that the school expulsion was administrative discipline, not judicial punishment; therefore, according to the State, there is no double jeopardy violation. We agree with the State.

Defendant relies on two cases from the United State Supreme Court for the proposition that if a civil sanction serves either a retributive or deterrent purpose, then it is considered to be punishment for double jeopardy purposes. *See Montana Depart. of Rev. v. Kurth Ranch*, 511 U.S. 767, 128 L. Ed. 2d 767 (1994); *United States v. Halper*, 490 U.S. 435, 104 L. Ed. 2d 487 (1989).

Our North Carolina Supreme Court, however, has noted that *Halper* did not hold that every civil sanction be viewed as punishment; rather, *Halper* is a " 'rule for the rare case.' " *State v. Oliver*, 343 N.C. 202, 209, 470 S.E.2d 16, 21 (1996) (citing *United States v. Halper*, 490 U.S. 435, 104 L. Ed. 2d 487 (1989)). A civil sanction may invoke double jeopardy protections as a form of "punishment" only if it is grossly disproportionate to legitimate State goals separate from those served by criminal prosecution. *Id.* (holding administrative revocation of driver's license not punishment for double jeopardy purposes). Neither the severity of the sanction nor the fact that it has a deterrent purpose automatically establishes that it is a form of punishment. *See Kurth Ranch*, 511 U.S. at 779, 109 L. Ed. 2d at 779, 781. Nor does the fact that the sanction has a punitive component invoke double jeopardy protection where the government's remedial interests are tightly intertwined with its punitive interests. *See U.S. v. Hernandez-Fundora*, 49 F.3d 848, 852 (2d Cir. 1995) (remedial interest of maintaining order in a prison setting permits sanctions with punitive component, without being punishment for double jeopardy purposes).

We must therefore determine whether the purpose of the school expulsion was remedial or punitive in nature. *See Oliver*, 343 N.C. at 207, 470 S.E.2d at 19. If the purpose of expulsion is primarily remedial, double jeopardy protections are not invoked. For the reasons that follow, we hold that school expulsion serves primarily remedial goals.

N.C. Gen. Stat. section 115C-391(d), which authorizes the expulsion of students, provides in part:

> (a) Local boards of education shall adopt policies not inconsistent with the provisions of the Constitutions of the United States and North Carolina, governing the conduct of students and establishing procedures to be followed by school officials in suspending or expelling any student, or in disciplining any student if the offensive behavior could result in suspension, expulsion, or the administration of corporal punishment.

> (d) Notwithstanding G.S. 115C-378, a local board of education may, upon recommendation of the principal and superintendent, expel any student 14 years of age or older whose behavior indicates that the student's continued presence in school *constitutes a clear threat to the safety of other students or employees*. The local board of education's decision to expel a student under this section shall be based on clear and convincing evidence.

> If the student demonstrates to the satisfaction of the local board of education that *the student's presence in school no longer constitutes a threat to the safety of other students or employees, the board shall readmit the student to a school* in that local school administrative unit on a date the board considers appropriate.

G.S. § 115C-391 (emphasis added).

As evidenced by the statute, the primary goal of suspension and expulsion is the protection of the student body. Furthermore, the statute clearly states that when a child ceases to be a threat to the safety of other students, the board should readmit the student. G.S. § 115C-391(d). This section alone evidences the legislature's intent that school suspension and expulsion be primarily used as tools to ensure student safety. Any punishment that a particular child suffers is merely incidental to the purpose of protecting the school community as a whole. *See Oliver*, 343 N.C. at 210, 470 S.E.2d at 22 (any deterrent effect a driver's license may have upon the impaired driver is merely incidental to overriding purpose of protecting the public's

safety). Moreover, as this Court stated in *Fowler v. Williams*, 39 N.C. App. 715, 251 S.E.2d 889 (1979), "[a] student's right to an education may be constitutionally denied when outweighed by the school's interest in protecting other students, teachers, and school property, and in preventing the disruption of the educational system." 39 N.C. App. at 718, 251 S.E.2d at 891. Reasonable regulations punishable by suspension do not deny the right to an education but rather deny the right to engage in the prohibited behavior. *See Craig v. Buncombe Co. Board of Education*, 80 N.C. App. 683, 684-85, 343 S.E.2d 222, 223 (1986).

Important, if not essential, nonpunitive purposes are served by administrative suspension and expulsion. We hold it is clear that under North Carolina law, expulsion from a school for violation of school policies is not punishment so as to invoke the protection of constitutional double jeopardy restrictions.

We conclude that defendant received a fair trial free from prejudicial error.

No error.

Judges WYNN and MARTIN, Mark D. concur.