STATE OF NORTH CAROLINA v. GEORGE LEE BRANHAM, JR., DEFENDANT

No. COA01-980

(Filed 17 September 2002)

### 1. Juveniles— custody—right to have parent present during questioning

The trial court erred in a possession of marijuana with intent to sell or deliver, possession of LSD with intent to sell and deliver, and trafficking in LSD case by admitting defendant juvenile's out-of-court statements to officers that were obtained in violation of defendant's right to have a parent present under N.C.G.S. § 7B-2101(d), because: (1) even if it is assumed that defendant's mother did not want to be present during defendant's interrogation, she did not have the ability to, in effect, waive defendant's right to have her present during interrogation; and (2) there is no evidence that it was defendant who initiated further communications with the officers after the officers told defendant his mother would not see him.

STATE v. BRANHAM

[153 N.C. App. 91 (2002)]

**2. Drugs— possession of marijuana with intent to sell or deliver—possession of LSD with intent to sell and deliver—trafficking in LSD—motion to dismiss—entrapment**

The trial court did not err by failing to dismiss the charges of possession of marijuana with intent to sell or deliver, possession of LSD with intent to sell and deliver, and trafficking in LSD even though defendant pled the affirmative defense of entrapment, because although defendant's testimony that an informant pushed defendant to obtain drugs for him, that defendant attempted to get the informant to make the purchase himself, and that defendant had never before been involved in any drug sales of this quantity may have been sufficient to raise the issues of inducement and lack of predisposition to commit the offenses, it fell short of compelling a conclusion of entrapment as a matter of law.

Appeal by defendant from judgments entered 2 March 2001 by Judge Richard D. Boner in Davidson County Superior Court. Heard in the Court of Appeals 21 May 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Gaines M. Weaver, for the State.*

*Nixon & Associates, by Georgia S. Nixon and Bobby E. McCroskey, for the defendant-appellant.*

HUDSON, Judge.

Defendant appeals his convictions for possession of marijuana with intent to sell or deliver, possession of LSD with intent to sell or deliver, and trafficking in LSD (1000 or more dosage units). The following is a summary of facts pertinent to defendant's appeal.

At the time of his arrest, defendant was sixteen years old and lived with his widowed mother. Although the testimony differed as to who initiated the transactions, the evidence established that police informant Jason Hunt discussed purchasing a large quantity (1000 dosage units) of LSD from defendant, and they arranged the purchase. On 2 February 2000, Hunt came to defendant's house to purchase the LSD. Defendant gave him two tabs to sample, and Hunt promised to return for the remaining LSD. Shortly thereafter, Detectives Woodall, Rankin, Westmoreland, and Cates from the Davidson County Sheriff's department arrived at defendant's

home. The detectives told his mother that defendant had sold drugs to an undercover police officer, and that they wanted to search her home. The officers proceeded to search the house, where they found a large quantity of LSD, as well as small quantities of LSD and marijuana elsewhere in the house. Officers transported defendant in handcuffs to the police station where they interrogated him. After being advised of his juvenile rights, defendant indicated and had the officers write on the form that he wanted his mother present. Although she was in the building at the time of the interrogation, the officers did not bring her to defendant, but told him he could continue with his statement anyway. Defendant wrote a statement on the form provided by the officers. The officers were not satisfied with the statement defendant wrote, so they destroyed it and instructed him to write another one. Once the officers were satisfied that the statement was consistent with what they believed, they had defendant sign it. Defendant was then charged, indicted, and later tried. We will discuss the evidence in additional detail as necessary to address the issues.

The jury convicted defendant of possession of marijuana with intent to sell or deliver, possession of LSD with intent to sell or deliver, and trafficking in LSD (1000 or more dosage units). The defense of entrapment was submitted to, and rejected by, the jury. The trial court sentenced him to a prison term of 6 months minimum and 8 months maximum for the consolidated possession convictions, and 175 months minimum and 219 months maximum for the trafficking conviction. Defendant appealed his convictions and noted seven assignments of error. In his brief, defendant brings forward six of these. *See* N.C. R. App. Proc. 28(a) (2001) (assignments of error not discussed in appellant's brief are deemed abandoned). We need only address assignments of error 1 and 4, as they are dispositive.

In addition to the arguments in his brief, defendant has filed a Motion for Appropriate Relief ("MAR") in this Court. In his MAR, defendant alleges that after his convictions in March 2001, a federal grand jury indicted Detectives Woodall, Rankin, and Westmoreland and others for conspiracy to distribute in excess of 5 kilograms of cocaine hydrochloride, in excess of 100 kilograms of marijuana, and unspecified quantities of anabolic steroids and "3, 4 methylene-dioxymethamphetimine." Alleging that this new evidence affects the credibility of the three investigating officers in his case, defendant seeks a new trial. In its written response to the motion, the State concedes that the defendant's allegations were factual, but maintains that

any criminal conduct by the officers was "irrelevant" to the outcome of this case. Subsequently, the defendant forwarded additional documents supporting his MAR, incorporating a superseding indictment of the officers, an affidavit from the FBI investigator, and further allegations, including the following:

> 4. That after the filing of Defendant-Appellant's Motion for Appropriate Relief, Woodall pleaded guilty on March 7, 2002 to conspiracy to distribute narcotics, interference with interstate commerce by threat or violence, and committing a violent drug crime involving a machine gun; Westmoreland pleaded guilty on March 7, 2002 to conspiracy to distribute narcotics and interference with interstate commerce by threat or violence; and Rankin pleaded guilty on March 7, 2002 to conspiracy to distribute narcotics and depriving an arrestee of his civil rights.

> 5. That Woodall, Westmoreland and Rankin are currently awaiting sentencing for the above convictions.

> 6. That Woodall, Westmoreland and Rankin have admitted that they had been engaged in illegal drug activity and federal civil rights violations, including the fabrication of search warrants and evidence, either during the time they investigated and apprehended Defendant-Appellant, or during Defendant-Appellant's trial, or both.

At oral argument, the State did not dispute these assertions.

[1] In his first argument, defendant contends that the trial court erred in admitting his out-of-court statement to the officers, because they obtained the statement in violation of his right to have a parent present pursuant to N.C. Gen. Stat. § 7B-2101(d) (2001). The provisions of N.C.G.S. § 7B-2101 are as follows:

> (a) Any juvenile in custody must be advised prior to questioning:

>> (1) That the juvenile has a right to remain silent;

>> (2) That any statement the juvenile does make can be and may be used against the juvenile;

>> (3) That the juvenile has a right to have a parent, guardian, or custodian present during questioning; and

(4) That the juvenile has a right to consult with an attorney and that one will be appointed for the juvenile if the juvenile is not represented and wants representation.

. . . .

(c) If the juvenile indicates in any manner and at any stage of questioning pursuant to this section that the juvenile does not wish to be questioned further, the officer shall cease questioning.

(d) Before admitting into evidence any statement resulting from custodial interrogation, the court shall find that the juvenile knowingly, willingly, and understandingly waived the juvenile's rights.

A juvenile is defined as a "person who has not reached the person's eighteenth birthday and is not married, emancipated, or a member of the armed forces of the United States." N.C. Gen. Stat. § 7B-101(14) (2001). That defendant was a juvenile is not in dispute.

In *State v. Smith*, 317 N.C. 100, 106, 343 S.E.2d 518, 521 (1986), *aff'd*, 321 N.C. 290, 362 S.E.2d 159 (1987), the Court noted that "[t]he statute makes no provision regarding a resumption of interrogation once the officer has ceased questioning the juvenile pursuant to the juvenile's exercise of his right to remain silent or to consult with an attorney or to have a parent present during questioning." The Court applied the rule requiring all interrogation to cease when an adult defendant requests an attorney, to a juvenile who requests an attorney, parent, guardian, or custodian. *See id.* Once a juvenile defendant has requested the presence of a parent, or any one of the parties listed in the statute, defendant may not be interrogated further "until [counsel, parent, guardian, or custodian] has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Michigan v. Jackson*, 475 U.S. 625, 626, 89 L. Ed. 2d 631, 636 (1986) (internal citations and quotations omitted); *see also State v. Hunt*, 64 N.C. App. 81, 86, 306 S.E.2d 846, 850 (holding that juvenile defendant's Miranda rights were violated when the police continued to interrogate him after he requested his parents), *disc. rev. denied*, 309 N.C. 824, 310 S.E.2d 354 (1983).

To determine whether the interrogation has violated defendant's rights, we review the findings and conclusions of the trial court. First, the court found, and the evidence supports, that defendant was hand-

cuffed at his home, and remained handcuffed while he was transported to the police station. Once the officers walked defendant into the interrogation room, they shackled him to the chair with shackles that were also bolted to the wall. Clearly, he was in custody at the time he made his statement. *See State v. Davis*, 305 N.C. 400, 410, 290 S.E.2d 574, 580-81 (1982) (describing the test for determining whether someone is in police custody as whether a "reasonable person in the suspect's position would believe himself to be in custody or that his freedom of action was deprived in some significant way").

Among the courts findings and conclusions are the following:

5. That based on controlled substances found in the residence on 2/2/00 defendant was placed in custody at his residence and transported by detectives to the Davidson County Sheriff's Department for questioning.

6. That defendant's mother was present at the residence when the residence was searched and when defendant was placed in custody. She voluntarily went to the Sheriff's Department in a vehicle separate from defendant.

7. That defendant was taken into the Sheriff's Department in handcuffs. His mother was waiting outside when he was taken into the building and observed defendant go into the building. Defendant knew she was present when he went into the building.

. . . .

9. That defendant's mother was placed in a room next door to the interview room where defendant was located and was with officer [sic] Woodall of the Davidson County Sheriff's Department.

10. That defendant was read his Miranda rights by Officer Rankin at approximately 10:15 P.M. The rights form was signed by defendant and Officer Rankin. The form did include advising the defendant of his right to have a parent, guardian, or custodian present during questioning as defendant was under age 18 at the time of questioning. This form was introduced into evidence as State's Exhibit A.

11. That defendant asked that his mother be present while he was questioned.

12. That Officer Rankin called Officer Woodall on a cellular phone to tell him that defendant wanted his mother to be present.

13. That Officer Woodall informed defendant's mother of this request. She told officers she did not wish to be with her son while he gave a statement because she believed he would be "snitching" on someone else. Officer Woodall wrote out a statement documenting Ms. Branham's decision, which was introduced into evidence as State's Exhibit C.

14. That Officer Woodall informed Officer Rankin that defendant's mother refused to be present during defendant's questioning and Officer Rankin[] informed defendant of this. Officer Rankin then told defendant "he could still continue if he chose to".

15. That defendant then agreed to give a written statement in the absence of his mother.

. . . .

17. That defendant initially wrote one statement, which was later destroyed because of inaccuracies in the names defendant gave as his suppliers. Defendant then wrote a second statement, which was introduced into evidence as State's Exhibit B.

. . . .

## CONCLUSIONS OF LAW

. . . .

1. The State has shown by a preponderance of the evidence that the defendant knowingly, willingly and understandingly gave a statement to the Davidson County Sheriff's Department on February 2, 2000 and that the statement meets the requirements of [N.C.G.S. §] 7B-2101.

2. WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, the written statement of the defendant given to the Davidson County Sheriff's Department on February 2, 2000 is admissible in evidence at the trial of this matter. The Court notes the objection of the defendant to this order and her allegation of the right to appeal.

The court made no specific conclusion of law regarding the significance of defendant's invoking his right to have a parent present.

Here, defendant was 16 years old at the time of his arrest. Officer Rankin informed defendant of his rights and presented him with the "Davidson County Sheriff's Department Statement of Rights: (For Juveniles up to Age 18)." In addition to the usual rights, the form includes: "[y]ou have a right to have a parent, guardian, or custodian present during questioning." Defendant signed the form next to "I understand these rights." An additional clause "(For Juveniles Age 14 to 18)" beneath his signature, states,

> I have read the above statement of my rights and have also had my rights explained to me by a police officer. Knowing these rights, I do not want a lawyer, parent, guardian or custodian present at this time. I waive each of these rights knowingly and willingly to answer questions and/or make a statement.

At defendant's insistence, Officer Rankin wrote beside defendant's signature, "[d]oes want a parent (mother)."

Defendant testified that he requested his mother's presence during his statement and instructed the officers to write down that he asked for his mother. The officers neither produced her nor ceased the questioning. Instead, they told defendant that he could continue with writing his statement. Both defendant and Officer Rankin testified that after defendant wrote out his first statement, Officer Rankin threw it away because it did not name the supplier that the officers believed was involved. Defendant and Officer Rankin testified that defendant then wrote out a second statement, and, in accordance with Officer Rankin's instructions, he changed the names of the others involved. Defendant said that the officers told him "if any information [in my statement] didn't comply with theirs, I would sit there all night," so he "wrote what they wanted to hear because I wanted to get out of there. I was scared."

The trial court made findings, based on the testimony of Officers Woodall and Rankin, that defendant's mother refused to see him. These and the other findings do not support the conclusion that the defendant's waiver and statement complied with N.C.G.S. § 7B-2101. Even if we assume that defendant's mother did not want to be present during defendant's interrogation, she did not have the ability to, in effect, waive his right to have her present during interrogation. *See In re Ewing*, 83 N.C. App. 535, 537, 350 S.E.2d 887, 888 (1986). In *Ewing,*

a decision under the prior juvenile code, this Court specifically held that "a parent, guardian, or custodian may not waive *any* right on behalf of the juvenile." *Id.* (emphasis by the Court). The current juvenile code, N.C.G.S. § 7B-2101, contains the same language. Defendant testified that after the officers told him she would not see him, he wrote a statement because he was told to and did not think that he had a choice in the matter. There is no evidence that it was defendant who initiated further communication with the officers.

Because defendant invoked his right to have a parent present during interrogation, all interrogation should have ceased. Since it did not, the trial court erred by denying defendant's motion to suppress his statement, which was elicited in violation of N.C.G.S. § 7B-2101. Defendant is entitled to a new trial, and on retrial the statement must be suppressed.

**[2]** In his third argument, defendant contends that the trial court erred by failing to dismiss the charges based on the affirmative defense of entrapment. Defendant argues that but for the repeated contacts and solicitation made by police agent Jason Hunt, he would not have possessed so great a quantity of LSD for the purpose of sale. We disagree.

"To establish the defense of entrapment, it must be shown that (1) law enforcement officers or their agents engaged in acts of persuasion, trickery or fraud to induce the defendant to commit a crime, and (2) the criminal design originated in the minds of those officials, rather than with the defendant." *State v. Worthington*, 84 N.C. App. 150, 157, 352 S.E.2d 695, 700 (1987) (citing *State v. Walker*, 295 N.C. 510, 246 S.E.2d 748 (1978)). "The defense is not available to a defendant who was predisposed to commit the crime charged absent the inducement of law enforcement officials." *State v. Davis*, 126 N.C. App. 415, 418, 485 S.E.2d 329, 331 (1997). Defendant bears the burden of proving the affirmative defense of entrapment. *See State v. Braun*, 31 N.C. App. 101, 103, 228 S.E.2d 466, 467, *disc. rev. denied*, 291 N.C. 449, 230 S.E.2d 766 (1976).

"Ordinarily, the issue of whether a defendant has been entrapped is a question of fact which must be resolved by the jury. It is only when the undisputed evidence discloses that an accused was induced to engage in criminal conduct that he was not predisposed to commit that we can hold as a matter of law that he was entrapped." *State v. Hageman*, 307 N.C. 1, 30, 296 S.E.2d 433, 450 (1982) (internal citations omitted). Entrapment is a complete defense to the crime

charged. If defendant's evidence creates an issue of fact as to entrapment, then the jury must be instructed on the defense of entrapment. Defendant has the burden of establishing its elements "to the satisfaction of the jury." *State v. Goldman*, 97 N.C. App. 589, 593, 389 S.E.2d 281, 283 (1990). If the jury so finds, the trial court is bound to dismiss his charges. When the evidence of entrapment is undisputed, the trial court may find that defendant was entrapped as a matter of law.

Defendant contends that the evidence at trial proved entrapment as a matter of law. The trial court denied defendant's motion to dismiss based on the affirmative defense of entrapment, but did instruct the jury on the defense of entrapment. In reviewing the trial court's denial of the motion to dismiss, we must first determine whether the evidence was undisputed that agents of the State persuaded defendant to engage in trafficking LSD or whether defendant was predisposed to commit the offense. "Predisposition may be shown by a defendant's ready compliance, acquiescence in, or willingness to cooperate in the criminal plan where the police merely afford the defendant an opportunity to commit the crime." *Hageman*, 307 N.C. at 31, 296 S.E.2d at 450. Second, we must determine whether the evidence supported the inference that the crime originated with the police and their agents, and not the defendant.

After careful analysis, we conclude that there was evidence that Jason Hunt and the officers initiated the offense, but also evidence from which the jury could have inferred that defendant was predisposed to sell LSD. Defendant testified that two days before he was arrested, Jason Hunt, the older brother of a girl defendant knew, came over to his house and asked if defendant "could get him a kilo of Cocaine." Defendant testified that he was shocked by the request because, "I never dealt with Cocaine or messed with it at all. I told him I had no idea where I could get it or anywhere that anybody ever dealt with it." Then, Hunt asked defendant if he could obtain "ten sheets of LSD" for him. Defendant testified that he had "never dealt with anything . . . bigger than ten hits. And he just, he kept pushing and pushing and kept asking me and kept asking me and I told him I didn't know where I could get it from. I didn't know where I could get that amount." Defendant testified that on that occasion and the next day Hunt asked him repeatedly to get ten sheets of LSD. Defendant stated, "I had no intention of getting it. I told him that I didn't want to have anything to do with it." Hunt persisted until defendant agreed to locate the quantity of LSD Hunt requested. Defendant offered to ride

with Hunt to the seller, so Hunt could purchase the LSD himself, but when Hunt offered defendant an additional one-hundred dollars, defendant finally agreed to make the purchase himself and bring it to defendant's home. Defendant made the purchase, contacted Hunt and told him to come pick it up, but Hunt only picked up two hits of LSD. Minutes later, the police arrived and arrested defendant.

The State presented testimony from Officer Woodall to the effect that during these events Jason Hunt was working for him as a paid informant. Woodall did not know what Hunt and defendant said to each other, but did not dispute that the drug deal at issue here originated with a telephone call from Hunt. Woodall testified that he had paid Hunt to act as an informant in drug cases for a few years. He had worked with Hunt, both before and after Hunt spent some time in prison. Woodall did not dispute that Hunt called him to initiate the deal involving defendant, or that the officers were to provide the money.

However, Hunt claimed that in a telephone call witnessed by Officer Medlin, defendant offered to sell Hunt as much LSD as he wanted. Hunt admitted that he called Officer Woodall and told him that LSD was getting into his sister's hands, and that he (Hunt) "would like to put a stop to it."

Q. So you were upset that your sister, your baby sister, as you put it, had some LSD; is that correct?

A. Yes, ma'am.

Q. You decided you were going to set up whoever it was that you perceived put it that way; isn't that correct?

A. Yes, ma'am.

Woodall then asked Medlin to go with Hunt to make the undercover buy. Medlin and Hunt gave widely divergent stories of what occurred next, and Medlin did not corroborate Hunt's testimony about the telephone call to defendant. Hunt's younger sister, Summer, testified that she had nothing to do with her older brother because he lied regularly and had stolen her belongings in the past. She specifically denied ever purchasing drugs from defendant or his friend, and stated that her brother lied during his testimony.

Defendant's testimony that Hunt repeatedly pushed defendant to obtain drugs for him, that he attempted to get Hunt to make the purchase himself, and that he had never before been involved in any drug

sales of this quantity may have "been sufficient to raise the issues of inducement, and lack of predisposition to commit the offenses, but fell short of compelling a conclusion of entrapment as a matter of law." *Davis*, 126 N.C. App. at 418, 485 S.E.2d at 331. Thus, the issue of entrapment was properly submitted to the jury. The trial court did not err in denying defendant's motion for dismissal of the charges based on entrapment as a matter of law.

Because we find that the officers violated N.C.G.S. § 7B-2101, we remand for a new trial. And finally, we dismiss as moot defendant's Motion for Appropriate Relief, without prejudice to his right to refile in the trial court should he deem it necessary.

New trial.

Judges GREENE and BIGGS concur.