STATE OF NORTH CAROLINA v. RAYTHEON WILLIAMS

No. COA10-571

(Filed 1 February 2011)

## 1. Confessions and Incriminating Statements— interrogation of juvenile defendant—initial invocation of rights—defendant initiated further conversation

The trial court did not err by denying defendant's motion to suppress his incriminating statement to police officers because the statement was not obtained in violation of N.C.G.S. § 7B-2101. Although defendant initially invoked his right to have his mother present during his custodial interrogation, the evidence showed that defendant himself thereafter initiated further communication with the investigating officers.

## 2. Constitutional Law— Fifth Amendment right against self-incrimination—Sixth Amendment right to counsel—no violation

The trial court did not err by denying defendant's motion to suppress his incriminating statement to police officers where the statement was not obtained in violation of his Fifth or Sixth Amendment rights. Case law cited in defendant's brief involving "the utilization of coercive techniques" and "overbearing interrogation tactics" was not applicable in this case and, because defendant had not been formally charged with the robbery and murder at issue when detectives questioned him about those crimes, defendant's Sixth Amendment right to counsel had not yet attached when he was questioned by the detectives.

Appeal by defendant from judgments entered 20 November 2009 by Judge William Z. Wood, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 1 November 2010.

*Roy Cooper, Attorney General, by LaToya B. Powell, Assistant Attorney General, for the State.*

*Mary March Exum, for defendant–appellant.*

MARTIN, Chief Judge.

Defendant Raytheon Williams appeals from judgments entered upon jury verdicts finding him guilty of first-degree murder in

violation of N.C.G.S. § 14-17, robbery with a firearm in violation of N.C.G.S. § 14-87, and conspiracy to commit robbery with a firearm in violation of N.C.G.S. § 14-2.4(a). We find no error.

The evidence tended to show that, on 24 January 2007, during the course of their investigation into the 25 November 2006 murder of Satwinder Singh at the Aman Mini Mart in Greensboro, North Carolina, Detectives Mike Matthews and Leslie Holder with the Homicide Squad of the Greensboro Police Department interviewed the seventeen-year-old defendant, who was in the Guilford County jail on unrelated charges. The detectives had defendant brought to an interview room in the Criminal Investigations Division at the jail to talk with him. After explaining that they were there to investigate a murder and robbery at the Aman Mini Mart, Detective Matthews asked defendant "some basic questions" about his education and verified that he was not under the influence of any impairing substances. Detective Matthews then read defendant the following from the Greensboro Police Department "Statement of Rights (For Juveniles up to Age 18)" form:

> Before asking you any questions, we want to advise you of your rights and determine that you understand fully what your rights are.
>
> 1. You have the right to remain silent.
>
> 2. Whatever you say can and will be used as evidence against you in a court or law.
>
> 3. You have a right to talk with a lawyer and to have a lawyer present with you while you are being questioned. If you do not have a lawyer and want one, a lawyer will be appointed for you.
>
> 4. You have a right to have a parent, guardian, or custodian present during questioning.
>
> 5. You may decide now or at any later time to exercise the above rights and not answer any questions or make any statement.

Detective Matthews also reviewed with defendant the "Waiver of Rights (For Juveniles Age 14 to 18)" section of this form, which provides:

> I have read the above statement of my rights and have also had my rights explained to me by a police officer. Knowing these rights, I do not want a lawyer, parent, guardian or custodian pres-

ent at this time. I waive each of these rights knowingly and willingly agree to answer questions and/or make a statement.

According to the detectives, defendant acknowledged that he understood the rights as they had been read to him by signing the "Statement of Rights" section of the form. Defendant then requested to speak with his mother. Upon hearing defendant's request, Detectives Matthews and Holder ended the interview, indicated defendant's request on the "Waiver of Rights" section of the form as "Parent Requested—Gloria Gant," and exited the interview room.

For the next ten minutes or so, the detectives reviewed the information in the case file to determine how to contact defendant's mother. Since, according to the detectives, the case file contained "conflicting information" regarding where defendant's mother lived, the detectives re-entered the interview room for the limited purpose of asking defendant "how [they] could get in touch with his mother." Both detectives testified on voir dire that no other questions were asked of defendant at this time.

Defendant gave the detectives his mother's current residential address and advised that the detectives would "have to call several people to get in touch with her" because she did not have a phone. Defendant then asked Detective Matthews "when [he] was going to talk to him about the robbery and the murder at the convenience store on Church Street." Detective Matthews explained that he could not speak with defendant about that incident because defendant had stated that he wanted his mother present for any such questioning. Defendant then told Detective Matthews that the detective "misunderstood" him, and that defendant only wanted his mother present for questions related to the charges for which he was currently in jail, but said specifically that he "*did not want her present* when he talked to [Detective Matthews] about the robbery and the man getting killed." (Emphasis added.) Detective Matthews asked defendant if he was sure, and defendant indicated that he was. Detective Matthews advised defendant that he "would give him a few minutes and would be back in to talk to [defendant] if he still wanted to talk," at which point the detectives left the room once again.

A few minutes later, the detectives re-entered the interview room, and Detective Matthews asked defendant if he still wanted to speak with him without his mother present. Defendant stated that he did. Detective Matthews again read defendant his rights using a second, unmarked copy of the Greensboro Police Department "Statement of

Rights (For Juveniles up to Age 18)" form as his guide. Defendant signed this second form, again indicating that he understood the rights as they were administered to him by Detective Matthews. This time, defendant also signed the "Waiver of Rights (For Juveniles Age 14 to 18)" section of this form, indicating his decision to waive these rights. After signing the second form waiving his rights, defendant gave a statement implicating himself in the 25 November 2006 robbery and murder at the Aman Mini Mart. No portion of the interview was recorded.

Defendant moved to suppress his incriminating statement. The trial court denied the motion to suppress. Following a trial, a jury returned verdicts finding defendant guilty of first-degree murder, robbery with a firearm, and conspiracy to commit robbery with a firearm. Defendant appeals from judgments entered upon the verdicts sentencing him to life imprisonment without the possibility of parole for first-degree murder and a consecutive term of 64 to 84 months imprisonment for the other offenses.

---

[1] Defendant first contends the trial court erred by denying his motion to suppress his incriminating statement because it was obtained in violation of N.C.G.S. § 7B-2101. We disagree.

N.C.G.S. § 7B-2101(a)(3) provides that "[a]ny juvenile in custody must be advised prior to questioning . . . [t]hat the juvenile has a right to have a parent, guardian, or custodian present during questioning." N.C. Gen. Stat. § 7B-2101(a)(3) (2009). "If the juvenile indicates in any manner and at any stage of questioning pursuant to this section that the juvenile does not wish to be questioned further, the officer shall cease questioning." N.C. Gen. Stat. § 7B-2101(c). Thus, once a juvenile defendant "has requested the presence of a parent, or any one of the parties listed in the statute, defendant may not be interrogated further until [counsel, parent, guardian, or custodian] has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police.*" *State v. Branham,* 153 N.C. App. 91, 95, 569 S.E.2d 24, 27 (2002) (emphasis added) (alteration in original) (internal quotation marks omitted). "To determine whether the interrogation has violated defendant's rights, we review the findings and conclusions of the trial court." *Id.*

In the present case, the parties do not dispute, and the evidence supports, the trial court's findings that defendant was a seventeen-year-old juvenile and was already in custody at the time he was

brought to the interview room at the jail for questioning. The parties further agree, and the evidence supports, that defendant initially invoked his right to have his mother present during questioning and that the detectives ceased all questioning and left the interrogation room after defendant invoked this right in accordance with N.C.G.S. § 7B-2101. At issue, then, is whether the evidence supports the trial court's findings and conclusions that defendant "initiated the conversation the second time, and thereafter he waived [his] right [under N.C.G.S. § 7B-2101] knowingly, voluntarily, and willingly."

The court made extensive findings of fact based on the evidence recounted above, including the following:

That after about 10 minutes[, during which time the detectives searched the case file for information about how to contact defendant's mother but could not determine how to do so,] Detective Matthews and Detective Holder went back into the— re-entered the interview room or went back into the interview room and asked—and Detective Matthews asked the defendant how to get in touch with his mother.

The defendant advised or told Mister—Detective Matthews that Mr. Williams' mother does not have a phone, that he would have to call several people, that Detective Matthews would have to call several people to get in touch with her. He told—Mr. Williams told Detective Matthews that his mom stayed at 703 Holt Avenue, that the defendant, Mr. Williams, then asked Mister—Detective Matthews when I was going to talk to him about the robbery and murder at the convenience store on Church Street; that Detective Matthews responded or answered, I could not talk to him about that because he had requested his mother, that Mr. Williams had requested his mother.

The defendant, Mr. Williams, then said that he misunderstood him, that—that Mr. Matthews misunderstood him and that Mr. Williams just wanted to talk to his mother about the breaking and entering charges and getting out of jail. Mr. Williams said that he did not want his mother present when he talked about the robbery and the man getting killed.

Detective Matthews asked him if he was sure that he wanted to talk to him about this subject robbery and the man getting killed and the defendant—meaning the robbery and the man getting killed—and the defendant said he was sure. Detective Matthews told him he would leave the room to let him think about this and

would come back in a few minutes, and Detective Matthews and Detective Holder left the room.

Detective Matthews, before leaving the room, told the defendant that he'd let him talk to us if he still wanted to talk to us after a few minutes; that Detective Holder and Detective Matthews left the room, stayed out of the room for approximately four or five minutes; that at about 6:10 p.m. the two detectives went back into the room, that Detective Matthews asked the defendant if he still wanted to speak to him without his mother present, the defendant stated he did.

. . . .

That they went back into the room [after leaving when defendant initially requested the presence of his mother before further questioning], that the defendant stated he wanted to talk about the robbery and murder; that Detective Matthews did—when they re-entered the room, that Detective Matthews did not make any statements to the defendant concerning the murder or robbery at the convenience store; that Detective Matthews did not—when they—when they re-entered the room Detective Matthews did not tell the defendant concerning any statements of the codefendant or anything implicating Mr. Williams or otherwise.

Although defendant initially invoked his right to have his mother present during his custodial interrogation in accordance with N.C.G.S. § 7B-2101(a)(3), the evidence showed that defendant himself thereafter initiated further communication with the investigating detectives. Such communication was not the result of any further interrogation by the detectives. Instead, the evidence shows that defendant told the detectives that they "misunderstood" him when he requested the presence of his mother for further questioning, because defendant only wanted his mother present for questioning related to the charges for which he was already in custody. Defendant specifically told the detectives that he did not want his mother present during any questioning related to the robbery and murder at the Aman Mini Mart. Therefore, we conclude the evidence supports the trial court's findings, which in turn support its determination that defendant's incriminating statement was not elicited in violation of N.C.G.S. § 7B-2101, because "defendant voluntarily, knowingly waived his rights, including the right to have an attorney present . . . and the right to have a parent, guardian, and custodian present."

**STATE v. WILLIAMS**

[209 N.C. App. 441 (2011)]

**[2]** Defendant also contends the trial court erred by denying his motion to suppress because he suggests his incriminating statement was obtained in violation of his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel. With respect to the Fifth Amendment, defendant cites case law involving "the utilization of coercive techniques" and "overbearing interrogation tactics," but fails to indicate how these or any of the other cases upon which he relies in this section of his brief are applicable to the case before us. With respect to the Sixth Amendment right to counsel, such a right is "*offense-specific,*" *see State v. Strobel,* 164 N.C. App. 310, 318, 596 S.E.2d 249, 255 (2004), *appeal dismissed and disc. review denied,* 359 N.C. 286, 610 S.E.2d 712, *cert. denied,* 545 U.S. 1140, 162 L. Ed. 2d 889 (2005), and "attaches only 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment.'" *State v. Lippard,* 152 N.C. App. 564, 569, 568 S.E.2d 657, 661 (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417 (1972)), *appeal dismissed, disc. review denied, and cert. denied,* 356 N.C. 441, 573 S.E.2d 159 (2002). "[W]ithout any attachment of the Sixth Amendment right to counsel, a suspect is free to waive the rights available to him under *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694 (1966), and its progeny." *Id.* at 570, 568 S.E.2d at 661-62 (internal quotation marks omitted). Since defendant concedes that he had not been formally charged with the Aman Mini Mart robbery and murder when detectives questioned him about those crimes, and admits that he was in custody only "after having been arrested on *charges unrelated* to this case," (emphasis added), we conclude that defendant's Sixth Amendment right to counsel had not yet attached when he was questioned by the detectives. Accordingly, we decline defendant's invitation to "look beyond the caselaw as it is, and to view this as an issue of first impression," and overrule these issues on appeal.

Finally, defendant contends the trial court erred by denying his motion to suppress because his interrogation was not electronically recorded in compliance with N.C.G.S. § 15A-211. However, defendant concedes that N.C.G.S. § 15A-211 is only applicable to interrogations occurring on or after 1 March 2008, *see* 2007 Sess. Laws 1282, 1284, ch. 434, § 2, and the interrogation at issue in the present case took place on 24 January 2007, more than one year before the statute's effective date. Accordingly, we overrule this issue on appeal.

No error.

Judges McGEE and ERVIN concur.