STATE OF NORTH CAROLINA v. NORMAN ADAMS

No. COA11-561

(Filed 7 February 2012)

**1. Drugs—trafficking in cocaine—jury instruction—entrapment—insufficient evidence**

> The trial court did not err in a trafficking in cocaine by possession, trafficking in cocaine by transportation, and conspiracy to traffic in cocaine by transportation case by denying defendant's request for an entrapment instruction. Defendant failed to meet his burden of presenting credible evidence that he was entrapped and that he was not predisposed to commit the crime charged.

**2. Drugs—trafficking in cocaine by possession—sufficient evidence of constructive possession**

The trial court did not err in a trafficking in cocaine by possession case by denying defendant's motion to dismiss for insufficient evidence that he possessed the cocaine. The State's evidence tended to show defendant's constructive possession of the cocaine at issue.

Appeal by Defendant from judgment and order entered 10 September 2010 by Judge Linwood O. Foust in Mecklenburg County Superior Court. Heard in the Court of Appeals 10 November 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Brent D. Kiziah, for the State.*

*Gilda C. Rodriguez for Defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Norman Adams ("Defendant") appeals from his convictions for trafficking in cocaine by possession, trafficking in cocaine by transportation, and conspiracy to traffic in cocaine by transportation. Defendant argues the trial court erred by (1) denying Defendant's request for an entrapment instruction and (2) denying Defendant's motion to dismiss. For the following reasons, we find no error.

## I.  Factual & Procedural Background

On 4 September 2007, the Mecklenburg County Grand Jury indicted Defendant for trafficking in cocaine by possession. On 24 March 2008, Defendant was indicted for trafficking in cocaine by transportation and conspiracy to traffic in cocaine by transportation, possession, and sale. The case was set for trial during the 6 September 2010 session of the Mecklenburg County Superior Court before Judge Linwood O. Foust. On 7 September 2010, the State dismissed the charges for conspiracy to possess a trafficking amount of cocaine and conspiracy to sell a trafficking amount of cocaine. On 7 September 2010, Defendant filed a notice of his intention to assert entrapment as an affirmative defense.

The State's evidence at trial tended to show the following. Defendant received several calls starting on 23 August 2007 from "Shaw," a confidential informant working with detectives from York County, South Carolina. Shaw asked Defendant for a "9," slang for 9 ounces of cocaine. Defendant told Shaw that he did not have any

cocaine but that he would "call a guy." Defendant called Kendrick Armstrong to ask about obtaining cocaine for Shaw. After Mr. Armstrong did not return Defendant's call, Defendant traveled to Mr. Armstrong's house to find him.

On 24 August 2007, Defendant drove Mr. Armstrong to Woodlawn Green Business Park in Charlotte, where Defendant had arranged with Shaw for a purchase of cocaine to take place. Detectives from the Charlotte-Mecklenburg Police Department who had been contacted by officials from York County observed from a distance a truck driven by Defendant arrive at the pre-arranged location. The detectives observed the truck drive through the business park, turn around, and then leave. Defendant did not see Shaw at the location, so he drove to Murphy's Tavern, located across the street from the business park.

At Murphy's Tavern, officers moved in to arrest both men. Detective Gregory Heifner approached the truck with his weapon drawn, announced that he was with the police, and ordered the occupants of the truck to raise their hands. Detective Heifner saw a "tennis-ball-sized" bag of white powder sitting on a set of scales on the floorboard of the console near the transmission hump between the seats of the truck. Officer Brian Walsh approached the driver's side door of the truck where he removed the Defendant from the truck and placed him under arrest. As Officer Walsh removed Defendant from the truck, he noticed a small bag of white powder fall to the ground.

Detective Kelly Little supervised the handling and collecting of evidence. Detective Little collected what he measured to be 87.5 grams of white powder from the bag sitting on the scales on the floorboard. He also collected what he measured as 10.7 grams of white powder from the ground next to the driver's side of the truck; 8.2 grams of marijuana; cell phones; two digital scales; and 9/10 of a gram of cocaine. Jennifer Liser, a forensic chemist for the Charlotte-Mecklenburg Police Department, tested the white powder collected from the scene of the arrest. Ms. Liser concluded the powder contained cocaine, the larger bag weighing 84.68 grams and the smaller bag weighing 8.60 grams.

Detective Dan Kellough interviewed Defendant later that night. Defendant told Detective Kellough that after picking up Mr. Armstrong, Defendant knew Mr. Armstrong had cocaine on him. Defendant said that they had left the business park because

Defendant did not see anyone there and that they went to Murphy's Tavern to find out where Shaw was. Defendant told Detective Kellough that he had been involved as a middle man in a drug deal at least one time prior to the incident in question.

At the conclusion of the State's evidence, Defendant made a motion to dismiss, which the trial court denied. Defendant testified on his own behalf. Defendant stated that Shaw called him repeatedly, up to 20 times in four hours. He testified that he borrowed a friend's truck to pick up Mr. Armstrong and that he didn't know anything about drugs. Defendant admitted on cross-examination that he had been the middle man in a purchase once before. Defendant renewed his motion to dismiss at the close of all of the evidence, and the trial court again denied his motion.

Defendant requested the pattern jury instruction regarding entrapment. The trial court denied Defendant's request. On 10 September 2010, a jury found Defendant guilty of trafficking in cocaine by possession, conspiracy to traffic in cocaine by transportation, and trafficking in cocaine by transportation. Defendant was sentenced to a minimum of 35 months and a maximum of 42 months imprisonment.

## II. Jurisdiction & Standard of Review

Defendant appeals from a final judgment in superior court where he was convicted of a non-capital offense. Therefore, we have jurisdiction over his appeal pursuant to N.C. Gen. Stat. § 7A-27(b) (2011).

The standard of review for a trial court's decision regarding a jury instruction is *de novo*. *State v. Jenkins*, 202 N.C. App. 291, 296, 688 S.E.2d 101, 105 (2010). We also review the trial court's denial of Defendant's motion to dismiss *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

## III. Analysis

### A. Entrapment

[1] Defendant contends the trial court erred in denying Defendant's request for an entrapment instruction. We disagree.

The burden of proving the affirmative defense of entrapment lies with the defendant. *State v. Hageman*, 307 N.C. 1, 28, 296 S.E.2d 433, 448 (1982). "Before a Trial Court can submit such a defense to the jury there must be some credible evidence tending to support the defendant's contention that he was a victim of entrapment, as that

term is known to the law.'" *State v. Luster*, 306 N.C. 566, 571, 295 S.E.2d 421, 424 (1982) (quotation marks and citations omitted). In deciding whether an instruction on entrapment should be given, the evidence is viewed in the light most favorable to the defendant. *State v. Jamerson*, 64 N.C. App. 301, 303, 307 S.E.2d 436, 437 (1983).

A defendant must prove two elements to warrant an entrapment instruction: " '(1) law enforcement officers or their agents engaged in acts of persuasion, trickery or fraud to induce the defendant to commit a crime, and (2) the criminal design originated in the minds of those officials, rather than with the defendant.' " *State v. Branham*, 153 N.C. App. 91, 100, 569 S.E.2d 24, 29 (2002) (citation omitted). Entrapment " 'is not available to a defendant who was predisposed to commit the crime charged absent the inducement of law enforcement officials.' " *Id.* (citation omitted); *see also Luster*, 306 N.C. at 579, 295 S.E.2d at 428 ("When a defendant's predisposition to commit the crime charged is demonstrated, the defense of entrapment is not available to him."). The burden to prove a lack of predisposition remains with the defendant and is not shifted to the prosecution. *Hageman*, 307 N.C. at 28, 296 S.E.2d at 448. "Predisposition may be shown by a defendant's ready compliance, acquiescence in, or willingness to cooperate in the criminal plan where the police merely afford the defendant an opportunity to commit the crime." *Id.* at 31, 296 S.E.2d at 450.

Taking the facts in the light most favorable to Defendant, Shaw called Defendant repeatedly requesting cocaine. Defendant told him he would "call a guy." Defendant called Mr. Armstrong to try and get cocaine. Defendant then drove to Mr. Armstrong's house after he did not answer his phone. The next day, Defendant picked up Mr. Armstrong and drove him to a location previously arranged to meet Shaw. These actions by Defendant illustrate his "ready compliance, acquiescence in, [and] willingness to cooperate in the criminal plan" and thus his predisposition. In addition, Defendant admitted on cross-examination that he had been involved as a middle man on a prior deal, which further demonstrates a predisposition to commit the crime.

It is true that Defendant denied at trial arranging to meet Shaw and testified that he did not know he was arranging a cocaine deal. However, this testimony is to be weighed against the uncontradicted evidence of his physical presence at the scene of the cocaine purchase, his borrowing and driving the truck delivering the cocaine, the

phone calls to and from Shaw and Mr. Armstrong, and his admissions to law enforcement shortly after his arrest. ·

Defendant failed to meet his burden of presenting credible evidence that he was entrapped and that he was not predisposed to commit the crime charged. The trial court correctly denied Defendant's request for a jury instruction for entrapment.

## B. Trafficking in Cocaine by Possession

[2] Defendant argues that the trial court erred in denying his motion to dismiss the trafficking in cocaine by possession charge because there was insufficient evidence that he possessed the cocaine. We disagree.

This Court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). The evidence must be viewed "in the light most favorable to the state, giving the state the benefit of every reasonable inference that might be drawn therefrom." *State v. Etheridge*, 319 N.C. 34, 47, 352 S.E.2d 673, 681 (1987).

" 'To prove the offense of trafficking in cocaine by possession, the State must show 1) knowing possession of cocaine and 2) that the amount possessed was 28 grams or more.' " *State v. Acolatse*, 158 N.C. App. 485, 488, 581 S.E.2d 807, 809 (2003) (citation omitted). "Possession can be actual or constructive. When the defendant does not have actual possession, but has the power and intent to control the use or disposition of the substance, he is said to have constructive possession." *State v. Baldwin*, 161 N.C. App. 382, 391, 588 S.E.2d 497, 504-05 (2003) (internal citation omitted).

Constructive possession can be inferred when there is evidence that a defendant had the power to control the vehicle where a controlled substance was found. *State v. Baublitz*, 172 N.C. App. 801, 810, 616 S.E.2d 615, 621 (2005). However, " 'where possession . . . is nonexclusive, constructive possession . . . may not be inferred without other incriminating circumstances.' " *Id.* (citation omitted) (alterations in original).

After receiving a phone call from Shaw requesting cocaine, Defendant contacted Mr. Armstrong to get the cocaine. After Defendant picked up Mr. Armstrong, Defendant drove to the location where Defendant had arranged with Shaw for the purchase to take

place. Defendant admitted to Detective Kellough that he knew Mr. Armstrong had the cocaine. When officers moved in to arrest Defendant, they found cocaine on scales in the center of the truck. Defendant was driving and thus in control of the truck. Defendant facilitated the transaction by providing the vehicle, transportation, and arranging the location. These are sufficient incriminating circumstances for the jury to infer that Defendant constructively possessed the drugs.

Although Defendant argues that he did not have exclusive possession of the truck, this is not necessary. Possession "may be in a single individual or in combination with another." *State v. Anderson*, 76 N.C. App. 434, 438, 333 S.E.2d 762, 765 (1985); *see also State v. Allen*, 279 N.C. 406, 412, 183 S.E.2d 680, 685 (1971) (finding constructive possession where there was power and intent to control disposition and use while acting in combination with others). Defendant could constructively possess the drugs in combination with Mr. Armstrong.

Thus, the State's evidence tended to show Defendant's constructive possession of the cocaine at issue, and his motion to dismiss was properly denied.

### IV. Conclusion

For the forgoing reasons, we find

No error.

Judges THIGPEN and McCULLOUGH concur.